## ENSMINGER *v.* POWERS & Wife.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF TENNESSEE.

Decided April 23d, 1883.

*Appeal—Decree—Exceptions—Practice—Taxation—Statutes.*

A decree, in a suit in equity, set forth a hearing on pleadings and proofs, and awarded relief, but it ordered that a bill of exceptions signed by the court be filed as a part of the record. The bill of exceptions showed that the judge who held the court refused to permit the counsel for plaintiff to argue the cause, and allowed the counsel for the defendant to determine whether the case fell within a prior decision of another judge, and refused to determine that question himself, and then directed that the decree be entered, which was in favor of the defendant. On a bill of review, filed by the plaintiff : *Held,* that the decree must be held for naught.

A decree was made by a circuit court, in December, 1873, against two plaintiffs. In January, 1874, they appealed to this court. In December, 1875, the appeal was dismissed for the failure of the appellants to file and docket the cause in this court. In September, 1876, a bill of review was filed for errors in law : *Held,* that the bill was filed in time, though not within two years from the making of the decree, because the control of the circuit court over the decree was suspended during the pendency of the appeal.

A lot of land, part of the navy yard at Memphis, Tennessee, not under lease to a private party, being exempt from State and county taxation by section 9 of the act of the legislature of Tennessee, which took effect February 20th, 1860, ch. 70, Private Acts of 1859–'60, 284, was, by section 13 of the act of Congress of August 5th, 1861, ch. 45, 12 Stat. 297, exempt from taxation under the direct tax on land authorized by that act.

Bill in equity. The facts and the issues in controversy are fully stated in the opinion of the court.

*Mr. N. Wilson* and *Mr. W. B. Gilbert* for appellant.
*Mr. Wm. M. Randolph* for appellees.

Mr. JUSTICE BLATCHFORD delivered the opinion of the court.

In May, 1867, a bill in equity was filed by the board of mayor and aldermen of the city of Memphis and Bridget Powers against Marmaduke L. Ensminger and J. J. Sears, in the Circuit Court of the United States for the Western District of Tennessee. The bill was sworn to by John C. Powers as

agent for Bridget Powers. The substantial allegations of the
bill were that the city then owned in fee seventy-five acres of
land in Memphis, known as the navy yard, which land, after
having been dedicated by its owners, in 1844, to the govern-
ment of the United States, in fee, for naval purposes, was ceded
to said city by the government, in fee; that the city, in Feb-
ruary, 1866, leased lot 10, part of said land, to said Bridget
Powers, for twenty years, and she took possession of it; that
Ensminger, and Sears, as his agent, were setting up a claim to
said lot, as having been purchased by Ensminger at a sale of
it by the United States direct tax commissioners in June, 1864,
and had procured said commissioners to issue a writ of posses-
sion on April 30th, 1867, to put Ensminger in possession of said
lot; that the tax sale was void because (1) the act of Congress
under which the sale was made was unconstitutional; (2), the
assessment was excessive and unauthorized; (3), the enforce-
ment of the act was premature in time; (4), the act was not fol-
lowed as to advertising the sale in a newspaper or as to the
length of time of the advertisement; (5), the sale was made on
a day subsequent to that for which it was advertised. The bill
prayed for a decree declaring the sale void, and for an injunc-
tion restraining the issuing or execution of any writ dispossess-
ing the plaintiffs. A temporary injunction was issued.

Ensminger answered, setting up his tax title, as evidenced by
a certificate of sale, alleging the validity of the sale and deny-
ing the allegations of the bill. The cause was heard on plead-
ings and proofs, and on the 27th of December, 1873, the court
entered a decree that the injunction be dissolved; that lot 10
was duly sold to Ensminger, and he acquired thereby a title to it
in fee simple; that he should have a writ to the marshal to put
him in possession; that there be a reference to a master to take
an account of the damages to Ensminger from the injunction,
for which purpose only the bill should be retained; and that
the plaintiffs pay the costs of the suit. The city and Bridget
Powers appealed to this court. John C. Powers signed the
appeal bond for costs, as surety. There was no supersedeas
bond. On the 13th of December, 1875, the cause came on for
hearing in this court, and it appearing that the appellants had

failed to file and docket the cause in this court in conformity with its rules, the appeal was docketed and dismissed by this court with costs, execution was awarded against the plaintiffs for the costs of the defendants in this court, and the cause was remanded to the circuit court, for execution and further proceedings. The mandate of this court was filed in the circuit court, and on the 19th of June, 1876, that court made a decree that the reference as 'to the damages from the injunction proceed, and, that the referee also report the damages to Ensminger from the loss of rents and profits of the land; and under its order an alias writ of possession was issued by it, on July 8th, 1876, to the marshal to put Ensminger in possession of lot 10.

On the 9th of September, 1876, the said John. C. Powers, describing himself as the husband of the said Bridget Powers, and the said Bridget Powers, filed a bill in equity against the said Ensminger and the said Sears and the said city, in the said circuit court. The bill prays for a decree that the plaintiffs, or the plaintiff Bridget, have a right to the leased premises for the term of the lease; that the sale to Ensminger be declared void; that the said decrees of December, 1873, and June, 1876, be reviewed and set aside; and that Ensminger and Sears be enjoined from collecting rent from the plaintiffs, or either of them, for said lot, and from interfering with their possession of it. Ensminger and Sears having demurred to the bill, the court gave leave to the plaintiffs to file said bill as a bill of review, and then the demurrer was heard and overruled, with leave to the defendants to embody in their answer the matters of the demurrer, and a temporary injunction was granted according to the prayer of the bill, and the bill was dismissed as to the city, and the other defendants were allowed to answer the bill. They answered, there was a replication, the case was heard on pleadings and proofs, and in December, 1878, the court rendered a decree adjudging that the said decrees of December, 1873, and June, 1876, in the first suit be reversed, vacated, set aside and cancelled, and the plaintiffs, as against the defendants, be restored to all they had lost under and by virtue of said decrees and the process which had been issued thereunder;

that the plaintiff Bridget has a good title, as against the defendants, for the term of her lease from the city, to said lot 10, subject only to said lease; that Ensminger be perpetually enjoined from setting up any title to said lot under said tax sale certificate; that the said temporary injunction be made perpetual; that a writ issue to put the plaintiffs in possession of said lot; and that the plaintiffs recover from the defendants the costs of both of the suits and have execution therefor. Sears having died after the cause was submitted, the suit was ordered to be abated as to him, and Ensminger took an appeal to this court from said decree.

The bill in this suit sets forth that the land for the navy yard, after having been dedicated by its original proprietors, in 1828, for a landing for public purposes of navigation or trade forever, was conveyed to the government by the city of Memphis, in 1844, for a navy yard, without lawful authority, because it had been dedicated to public purposes by the original proprietors, and the city had accepted the dedication; that, in 1854, by an act of Congress, the government ceded the land to the city, for the use and benefit of the city, and after that, the rights of the public remained the same as before the conveyance to the government; that the city leased lot 10 to the plaintiff Bridget for the term from February 28th, 1866, to December 31st, 1886, for a yearly rent of $127.19, payable half-yearly; that the lot was vacant and she agreed with the city to put buildings on it, with the right to her to remove them as her own property at the end of the lease; that Ensminger and Sears had compelled John C. Powers to take a lease of the lot from Ensminger in order to enable the plaintiffs to avoid being turned out of possession, and also, as a condition of remaining, to give his 5 notes for $25 each as rent for 5 months from July 19th, 1876, one of which notes he had paid; that the plaintiff Bridget had put buildings on the lot, which were now on it, at a cost to her of $9,000 or $10,000; that after the plaintiffs had constructed much the larger part of the buildings they learned of the claim of Ensminger, and the plaintiff John C. applied to the city attorney to protect the plaintiffs, and he filed the bill in the first suit, not making

John C. a party; that Ensminger answered, setting up his tax title; that no cross-bill was filed, nor was the answer made a cross-bill, nor was any affirmative relief prayed in the answer; that some proof was taken and the cause was treated as at issue, though no replication was filed; that the decree entered was not entered on a hearing of the case by the judge who held the court, although the plaintiffs in the suit asked for a hearing, but the judge allowed the counsel for the defendants to enter the decree at his peril, subject to the right of the plaintiffs to bring a bill of review; that the plaintiffs excepted to such ruling, and the judge signed a bill of exceptions; that the appeal to this court was dismissed because the city refused to pay the necessary money for filing the transcript of the record, which had been made, and docketing the appeal; that the marshal was proceeding to execute the alias writ of possession when the plaintiff John C. accepted said lease and gave said notes, and the plaintiffs remain in possession; and that the said decree and proceedings did not bind either of the plaintiffs, because Bridget was a married woman and her husband was not a party. The bill alleges that the former decrees, so far as they undertook to decree the validity of the title of Ensminger to the premises, or to award a writ of possession to him, or to do anything more than dismiss the bill of the plaintiffs, departed from the established practice of the court, and were void or erroneous; and that the decree was erroneous, if not void, because it was not the deliberate judgment of the court upon the facts in the record, and because the cause was not at issue or ready for hearing. The bill then sets forth various reasons why the purchase and title of Ensminger were invalid. Among other things the bill says:

"These plaintiffs further state and show, that, in the year 1861, and from thence up to the date of the lease aforesaid, the said premises were not and had not been leased by the city of Memphis to any one, or, if any such lease had been made, the same had been abandoned and forfeited, and was not for any part or period of the same time in force or subsisting as a valid and effectual contract. The plaintiffs further state and show, that

by a special act of the general assembly of the State of Tennessee, in force in the year 1861, the said premises were not taxable by the State of Tennessee, or the United States of America, the same not being under a lease from the city, and, for that reason, that the said sale was void. And the plaintiffs further state and show, that the title to the said premises in 1861, and before and since that time, was in the city of Memphis, which held the same as public property, for municipal or public purposes, as provided by law, and therefore, by the law of the State of Tennessee, the said premises were not in the year 1861, or before or since, liable to a direct tax by the government of the United States, and for that reason the said sale was void."

The bill also prays that the lease taken and the notes given by John C. be cancelled. The decree granted this relief also.

The answer of Ensminger and Sears asserts the validity of the title of Ensminger under the tax sale; that the decree in the first suit was an adjudication in his favor as to all the allegations in this bill; that none of the alleged objections to the tax sale proceedings are tenable; that, although the lease to Bridget was not made until 1866, the property had been divided into lots and offered for lease by the city before the assessment of said tax in 1864, and at one time before that date a lease of lot 10 had been made by the city, which was not carried into operation because of the failure of the lessee to comply with it; that the property was not exempt from taxation under any act of the legislature of Tennessee, and was not in 1861, or before or since, held for municipal purposes; that the said Bridget has no right to the improvements she put on the land; that the former suit was commenced at the instance and request of John C., and he swore to the bill and prosecuted it in conjunction with Bridget; that said suit, under which all of the plaintiff's rights were fully considered and passed upon by the court, was a final adjudication of all of the questions and rights therein set up, and the decision, being upon the same facts and rights as are claimed by the plaintiffs in this suit, and between the same parties, is *res judicata* as to this suit; and that the defendants plead the

same as a complete bar to this suit. The answer then sets up as a defence most of the matters which had been so set up in the demurrer.

After the decree of June, 1876, in the former suit, the reference as to the damages from the injunction in that suit proceeded, and in November, 1876, a report was made awarding to Ensminger, as damages, $12,962.10. The city of Memphis excepted to the report, and on the 11th of January, 1878, the court made a decree that it had no jurisdiction to assess the damages from the injunction, and that the bill be dismissed, without prejudice to a suit at law on the injunction bond.

The first question to be considered is as to whether the decree of December, 1873, can be considered as a decree of the court for any purpose. The bill in the present suit sets forth certain facts as having occurred in court when the case came up for hearing, and refers to a bill of exceptions embodying such matters as having been signed by the judge who was holding the court, and ordered to be filed and form a part of the record of the cause, and alleges that the decree was erroneous, because it was not the deliberate judgment of the court upon the facts in the record. The decree states that the case was heard on the bill, answer, exhibits, agreement of counsel, and proof, and had been fully argued, and the court had duly deliberated thereon, but it also says:

"It is further ordered, that the bill of exceptions tendered and signed by the court be filed as part of the record, which is done accordingly."

There is in the record a bill of exceptions filed the same day the decree was made. This bill of exceptions states that the cause came on to be heard before the judge holding the court "under the following circumstances, to which counsel for the city of Memphis excepted, and prayed a bill of exceptions to, upon the record of the facts below, stated as they occurred: First. Duncan K. McRae, Esq., of counsel for the claimants of the tax titles, stated that he had been instructed by his honor H. H. Emmons, lately presiding at this term of the said court,

but who had then left the city of Memphis, where said court is held, to enter decrees in the series of causes in said court known as the ' United States tax-title cases,' in all such of these cases as fell within the purview of the decision of his honor, rendered in certain of those cases tried before the said Judge Emmons before that time; and that said decrees were to be entered in those cases which the said counsel thought came within his decision aforesaid, but to be so entered at the peril of said parties, because said judge would, upon a bill of review, set aside said decrees if it appeared to him by such a bill of review that the case did not properly fall within his said decision; that he had, at the further suggestion of said judge, published a notice in the city papers, that on Saturday, the 20th December aforesaid, he would proceed to take such decrees, when the counsel interested in the several cases could appear, which said newspaper notice is hereto attached. Secondly. The said counsel then proceeded to read from a list the cases and to designate such as he desired to enter decrees in and such as he would pass or continue. When the above-entitled cause was called the counsel for the city objected, and stated that the city attorney would insist that this cause did not come within the class of causes to which Judge Emmons referred, and stated that the city would contend that the property of its municipality was not liable to taxation; that it was exempt under an act of the legislature; that the proof showed the city was entitled to a decree. The counsel for the claimants of the tax titles, the said McRae, insisted that he was to be the judge of the cases in which he was entitled to take decrees, and was to take them at his peril, subject to a bill of review; and that if the city attorney would convince him, before the decree was entered, that the case was not one proper for a decree he would not enter it. The counsel for the city insisted that the presiding judge here present was to determine that question. Whereupon the presiding judge remarked ' that he did not know what Judge Emmons' decision was, nor the scope of it; that he had promised said justice to have entered decrees in such cases as fell within the decision, and that he understood that it was left to counsel for the claimants of the tax titles to determine which

were such cases, and that he would enter decrees in such cases as the said counsel should designate, with the understanding that such proceedings were at his peril.' Thereupon counsel for the city inquired if Judge Emmons' decree or decision, or the order under which these proceedings were had, were of record; and the counsel for the tax-title claimants informed the court that such order was not of record, but that it would be entered of record before the decrees were entered. And thereupon B. M. Estes, Esq., who was of counsel and argued the cases in opposition to the tax titles, stated to the court, that Judge Emmons' written opinion had been lost or mislaid, having been rendered some time ago and then withdrawn for revision, since which time it could not be found; that in it he had only decided that the acts of Congress under which the sales were made were constitutional, and the proceedings of the commissioners thereupon regular; that, prior to the final determination of the case by the judge, and while he had it under advisement, the case had been compromised, and hence no decree had ever been entered. Counsel for the city then objected to a decree in this case, because it involved other questions than the constitutionality of the acts of Congress and the regularity of the proceedings of the commissioners appointed under them, and asked to have those other questions argued. Whereupon counsel for the tax-title claimants insisted, that if the case contained other questions the city could show it on bill of review and the decree would be set aside under Judge Emmons' order; to which counsel for the city objected, that a bill of review would not lie, and insisted on a determination of the question by the court, whether this case came within Judge Emmons' order for the entry of decrees. And thereupon the court decided, that the counsel for the claimants should enter decrees in such cases as he designated, as, under the undertaking with his brother Emmons, he had only to direct such decrees to be entered as the counsel should determine. To all of which counsel for the city excepted, and prayed that by bill of exceptions the city should be allowed to show the proceedings in court as they occurred and its exceptions thereto. And now accordingly the said city here tenders this bill of excep-

tions, and objects to the said decree and all said proceedings as heretofore on the hearing they were objected to, and prays that said bill of exceptions may be signed and sealed by the judge presiding, and made a part of the record, which is done accordingly."

Under this state of facts the bill of exceptions must have the same effect as if the narration it contains of what occurred were incorporated in the body of the decree. Thus considered, it appears that, against the objection and exception of the counsel for the city, who represented both of the plaintiffs in the suit, the plaintiffs were denied by the court a hearing of the case on the merits, and the judge holding the court refused to decide whether the case fell within the prior decision or order of Judge Emmons, and allowed the counsel for the defendant to determine that question. Notwithstanding the statements in the decree that the case was heard on the pleadings and proofs and fully argued, and that the decree was the decree of the court, these statements are contradicted by the bill of exceptions, forming virtually part of the same decree. It is quite apparent that the judge intended that what occurred should be spread before this court on an appeal, so that its effect on the validity of the decree might be considered. There can be no doubt that it could be so considered; and, if on appeal, it must have a like effect on a bill of review, as it is to be looked at as forming a part of the decree. What, then, does it show, except that the proper forms of the administration of justice were disregarded, the functions of the judge were abnegated, there was no hearing or decision by the court, and the counsel for the defendant was allowed to prepare and enter such a decree as he chose? Words need not be multiplied to argue that a decree rendered under such circumstances must, on a bill of review, be held for naught and as if it did not exist. Though not the case of actual fraud practised on the court or on the opposite party, what was done operated as a legal fraud in respect of the rights of such party, through the illegal co-operation of the judge with one of the parties. In *McVeigh* v. *United States*, 11 Wall. 259, an information had been filed by the United States against certain property belonging to McVeigh, to forfeit it. He appeared and

put in a claim and answer. The district court struck it out be-because McVeigh resided within the Confederate lines and was a rebel, and condemned the property by default. This court, on a writ of error, reversed the judgment, on the ground that McVeigh was denied a hearing and the first principles of the due administration of justice were violated. Equally in the present case, the plaintiffs in the suit were denied a hearing, and their answer might as well have been stricken out. In addition to this, there was no judicial action by the court, and the de-fendant was allowed virtually to decide the cause in his own favor. For these reasons it must be held, that the decree in question cannot, in this suit, be regarded as a decree adjudicating any rights between the parties to the former suit, and that it forms no obstacle to the consideration of the issues raised in the present suit, provided the bill was filed in time, as a bill of review.

It was not filed within two years after the decree of December, 1873, was rendered. But the plaintiffs in that decree appealed from it to this court, it being a final decree. A bill of review must ordinarily be brought within the time limited by statute for taking an appeal from the decree sought to be reviewed, where, as here, the review sought is not founded on matters discovered since the decree. *Thomas* v. *Harvie's Heirs,* 10 Wheat. 146; *Whiting* v. *Bank of United States,* 13 Pet. 6; *Kennedy* v. *Georgia State Bank,* 8 How. 586; *Clark* v. *Killian,* 103 U. S. 766. But the appeal to this court was perfected by the giving of a bond for costs in January, 1874, and, although this court in December, 1865, dismissed the appeal for the failure of the appellants to file and docket the cause in this court, yet the cause was out of the court below and in this court until within two years before the bill in this suit was filed. The pendency of the appeal by Bridget Powers would have been a valid objection to the filing of a bill of review by her for the errors in law now alleged, and, inasmuch as the appeal was not heard here on its merits, but the prosecution of it was abandoned, we are of opinion that the bill of review was filed in time. While the appeal was pending here, although there was no supersedeas,

the circuit court had no jurisdiction to vacate the decree, in pursuance of the prayer of a bill of review, because such relief was beyond its control. The time during which that control was suspended to await the orderly conduct of business in this court in regard to hearing the appeal, is not to be reckoned against Bridget Powers in this case, although she joined in the appeal. She was exercising a right in doing so, and, as the city of Memphis was the principal plaintiff and appellant, and was endeavoring to protect its title in fee, and thus her right as a lessee, it may very well have been, as is alleged in the bill, that the appeal fell because the city refused to pay the necessary money for filing the transcript of the record. Being thus left to the protection of her own rights, she may well have concluded that a bill of review was preferable to the further prosecution of the appeal, when she had such good cause for that course, as now appears, although the same error might have been corrected if the appeal had been heard on the merits.

This bill of review is properly brought, therefore, because of the error on the face of the decree which has been considered, and, the decree being set aside, as it must be, we are free to examine the question as to the validity of the tax title set up by Ensminger.

Although the sale of the lot for taxes preceded the lease to Bridget Powers, the sale was invalid as to her if the lot was not subject to be sold 'for taxes. By section 13 of the act of Congress of August 5th, 1861, chap. 45, 12 Stat. 297, providing for a direct tax and for its assessment on land, there was exempted from tax all land permanently or specially exempted from taxation by the laws of the State wherein it was situated, at the time of the passage of that act. The same section provided that, in making such assessment, due regard should be had to the latest valuation under the authority of the State. The exemption of land exempted from taxation by the laws of the State is repeated in section 1 of the act of June 7th, 1862, chap. 98, 12 Stat. 422, and it is there provided that the direct taxes shall be charged on lands and lots of ground as the same were enumerated and valued under the last assessment and valuation thereof made under the authority of the State before

January 1st, 1861. Section 7 of that act, which makes the certificate of the sale of the land for the tax *prima facie* evidence of the regularity and validity of the sale, and of the title of the purchaser, provides that the certificate may be affected, as evidence of the regularity and validity of the sale, by establishing the fact that the property was not subject to taxes. These acts of 1861 and 1862 governed the sale in question. By section 9 of the act of the legislature of Tennessee, which took effect February 20th, 1860, chap. 70, Private Acts of 1859–'60, 284, it was enacted " that all buildings and grounds owned by said city of Memphis and used exclusively for public purposes, such as for fire-companies and fire-engines, city water-works, markets and market-houses, and their grounds, and such parts of the navy yard as are not leased to private parties, be and the same are hereby declared free and exempt from all State and county taxes so long as owned by the city, and so used for public purposes."

The lot in question is shown by the testimony in the present suit to have been part of the navy yard, and to have been the property of the city of Memphis from before the passage of the act of 1861 until after the sale of it for taxes. It is not shown to have been leased to any private party between those dates. The decree in the first suit and the tax-sale certificate refer to the lot as " assessed to G. McLean in 1860," and the evidence shows that it was assessed to G. W. McLean in 1860, 1865, 1866 and 1867. The lease to Bridget Powers provides that she shall save the city harmless from any damages " to be claimed by the original lessees of said lot." But there is no legal evidence whatever of any subsisting lease during the period named. The bill alleges that there was none, and the answer substantially admits this averment, by saying that at one time before the assessment of the tax in 1864, a lease of the lot by the city had been made, " which was not carried into operation, by failure of the lessee to comply." This is equivalent to saying that there was no subsisting lease when the tax was assessed for which the lot was sold. There is the evidence of a witness for the plaintiff familiar with the premises, and residing near them, that he never knew of any

assertion of any claim to the lot by any lessee, and the case is one where, on all the facts, and in the absence of affirmative proof by the defendant of the existence of such lease, the evidence that there was none must be held sufficient.

We do not perceive that any of the objections set up by demurrer and repeated in the answer are tenable. The decree of the circuit court is affirmed in all respects, except in so far as it erroneously gives the date of July 19th, 1876, to the decree of June 19th, 1876, and recites erroneously the contents of said decree ; and except in so far as it may be construed as enjoining the defendant Ensminger from setting up any title to said lot 10 as against the city of Memphis, or as quieting or confirming the possession of the plaintiffs as against the city of Memphis under the said lease from said city ; and except in so far as it adjudges that the lease made by the defendants to the plaintiff John C. Powers, and the five notes executed by him, be delivered up and cancelled. As to this last-named lease, the plaintiff John C. Powers, having voluntarily entered into it, no ground is shown for setting it aside. It was correct to charge Ensminger with the costs of both suits. The decree of this court in the first suit imposed on the plaintiffs herein only the costs of the appeal to this court. The costs of the present appeal must be paid by the appellant.

*So ordered.*