## CENTRAL TRUST COMPANY *v.* GRANT LOCOMOTIVE WORKS.

## DAYTON, FORT WAYNE AND CHICAGO RAILROAD COMPANY *v.* GRANT LOCOMOTIVE WORKS.

## CENTRAL TRUST COMPANY *v.* GRANT.

## DAYTON, FORT WAYNE AND CHICAGO RAILROAD COMPANY *v.* GRANT.

## CENTRAL TRUST COMPANY *v.* GRANT LOCOMOTIVE WORKS.

## CENTRAL TRUST COMPANY *v.* GRANT.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF OHIO.

Nos. 1277, 1278, 1279, 1280, 1281, 1282. Submitted March 31, 1890. — Decided April 21, 1890.

If the decree of sale in a suit for foreclosing a railroad mortgage provides that the purchaser shall pay down a certain sum in cash when the bid is made, and such further portions of the bid in cash as shall be found necessary, in order to meet such other claims as the court shall adjudge to be prior in equity to the debt secured by the mortgage, the purchaser is bound by the decision of the court as to such other claims, and has no appealable interest therein.

A decree in a suit for foreclosing a railroad mortgage, that the claim by an intervening creditor of an interest in certain locomotives in the posses-

sion of the receiver and in use on the road, was just, and entitled to priority over the debt secured by the mortgage, is a final decree, upon a matter distinct from the general subject of the litigation; and it cannot be vacated by the court of its own motion after the expiration of the term at which it was granted.

The action of a Circuit Court in refusing to allow an amendment to a petition previously filed in a cause, or to permit it to be filed as a bill of review as of the date of the previous filing, is not subject to review here.

A bill of review based upon errors apparent in the record must ordinarily be brought within the time limited by statute for taking an appeal from the decree sought to be reviewed; and if it is based upon matter discovered after the expiration of that time, a neglect to file it promptly on the discovery will be laches.

MOTIONS TO DISMISS OR AFFIRM.  The court stated the case as follows :

On August 1 and 2, 1883, upon a creditor's bill brought by Granville D. Braman, a judgment creditor of the Toledo, Cincinnati and St. Louis Railroad Company, Edwin D. Dwight was appointed receiver of all the property of the company in Illinois, Indiana and Ohio, by orders made in the Circuit Courts of the United States in districts of those States. August 14, 1883, the Central Trust Company filed its bill in the United States Circuit Court for the Southern District of Ohio, against the Toledo, Cincinnati and St. Louis Railroad Company, the Cincinnati Northern Railway Company, and the said Braman and another, asking a foreclosure of certain mortgages therein described.  This cause was numbered 3554. In October, 1883, the Central Trust Company filed its bill in the same court against the Toledo, Cincinnati and St. Louis Railroad Company, the Toledo, Delphos and Burlington Railroad Company, and the said Braman, for a foreclosure of certain mortgages therein set forth, which cause was numbered 3578.  On October 25, 1883, one William J. Craig was appointed receiver of the mortgaged property in each of these causes, took possession of it and superseded the possession of the former receiver, Dwight.  October 27, 1883, the Grant Locomotive Works and the American Loan and Trust Company by leave filed their intervening petition in No. 3578, set

ting up a contract between the Toledo, Cincinnati and St. Louis Railroad Company and the Grant Locomotive Works, for the leasing and conditional purchase by and sale to the railroad company of ten locomotives, Nos. 57 to 66, for the price of $105,000, payable in instalments, the title to the locomotives remaining in the Grant Locomotive Works until payment was fully made; that the whole purchase price was represented by bonds of the railroad company, made payable at the office of the American Loan and Trust Company at Boston, and certified to by said trust company as trustee; the default of the Toledo, Cincinnati and St. Louis Railroad Company; and praying a surrender of the ten locomotives and the payment of all arrears due for rent, interest and repairs up to that time under said contract, and also of any deficiency that might arise upon a resale by them of the said ten locomotives, and for other relief.

On the same day, R. S. Grant filed in No. 3554 his intervening petition, alleging a similar contract with the Cincinnati Northern Railway Company in respect to other locomotives at the price of $90,558.97, of which $18,558.97 was paid in cash, and the remaining $72,000 was made payable in monthly instalments, represented by bonds of the Cincinnati Northern Railway Company, the payment of which was assumed by the Toledo, Cincinnati and St. Louis Railroad Company, upon consolidating with the former company in 1883, the title to the locomotives remaining in the said Grant until payment in full was completed; the default of the Toledo, Cincinnati and St. Louis Railroad Company; and praying for the return of the locomotives; the payment of all arrears due for rent, interest and repairs up to that time; and also of any deficiency that might arise upon a resale of the said locomotives, and for other relief.

On December 6, 1883, Craig, as receiver, by his attorney, filed his answer to the intervening petitions, admitted the agreements and the defaults in payment, and further answered that all the locomotives were in his possession and were necessary to the operation of the railroads by him, and prayed that the court would make such order as would enable him to

retain the possession and use of the locomotives. On the 17th of December, 1883, the attorney of the receiver notified the judge of the court that there was no reason why judgment should not go upon the intervening petitions, and that there was no objection to the draft of decrees, as the receiver had only resisted claims for damages, and these had been waived. On the 22d day of December, 1883, of the October term, two orders were entered in each of said causes Nos. 3554 and 3578, in favor of the intervening petitioners. The two in favor of R. S. Grant in No. 3554 were as follows:

"The said cause came on to be heard upon the petition and the answer of the receiver thereto and upon the evidence submitted on behalf of said petitioner.

"And it appearing to the satisfaction of the court that the receiver has in his possession Grant locomotive, No. 73, and is using the same in the operation of the said Cincinnati Northern Railway Company between Cincinnati and Dayton, Ohio, and that said locomotive is one of the ten covered by the agreement of lease set out in said petition, and was acquired by said railway company under the terms of said agreement, and was so held at the date of the appointment of the receiver herein;

"And it further appearing that the present receiver or his predecessor took the said locomotive, with its tender, into his possession as such receiver on the first day of August last, and has had the same in continuous use and possession since that date without having made any of the monthly payments of rental as provided in said indenture of lease, or other compensation for the use thereof;

"And it further appearing that the said locomotive is, in the judgment of the receiver, necessary to the proper operation of said railway and should be acquired as part of its permanent equipment, and that the value of said locomotive as fixed in said agreement of lease is reasonable, and that the petitioner, R. S. Grant, the owner of said locomotive and tender, is willing, upon receipt of the contract price or upon being adequately secured therein, to transfer the title of the same to the receiver;

"And the matter being fully heard by the court and upon

due deliberation thereon, it is hereby ordered, adjudged and decreed that the receiver pay to the said petitioner as rental for said locomotive and tender and in full of all claims for rental, interest and repairs down to the first day of December, 1883, the sum of $770.48, the same being the amount due to said date under the terms of said lease;

"And the further sum of $7520, balance in full as purchase money for said locomotive and tender;

"And it is further ordered that the receiver pay said several amounts as part of the operating expenses of the said railway out of any money not appropriated for the payment of current labor, supplies and taxes;

"And it is further ordered and decreed that the said several amounts, with interest thereon at the rate of six per cent from the first day of December, 1883, shall be a charge upon the earnings, income and all the property of the said Toledo, Cincinnati and St. Louis Railroad Company, and especially of the said Cincinnati Northern Railway Company, as ahead of the first mortgage or other bonded debt of said company or either of them; and any balance of said several amounts remaining unpaid at the date of the foreclosure and sale of said railways shall be a first lien thereon, and the said sale shall be made subject thereto."

The second order commenced:

"The said cause came on to be heard upon the petition and the answer of the receiver thereto and upon the evidence submitted on behalf of said petitioner. And it appearing to the satisfaction of the court that the receiver has in his possession Grant locomotives numbered 67, 68 and 72, with their tenders, and is using the same in the operation of the said Southeastern Division of the said defendant company's railroad, between Dayton and Wellston, Ohio, and that the said locomotives are three of the ten covered by the agreement of lease set out in said petition, and were acquired by said railway company under the terms of said agreement, and were so held at the date of the appointment of the receiver herein." 

This order continued in the terms of the preceding one, and decreed certain amounts of rentals, interest and repairs down

to December 1, 1883, and a further sum in full as purchase money for said locomotives and tenders, and concluded as follows:

" And it is further ordered that the receiver pay said several amounts as part of the operating expenses of the said Southeastern Division out of any money not appropriated for the payment of current labor, supplies and taxes.

" And it is further ordered and decreed that the said several amounts, with interest thereon, at the rate of six per cent, from the 1st day of December, 1883, shall be a charge upon the earnings, income and all the property of the said Toledo, Cincinnati and St. Louis Railroad Company, and especially of the said division, prior to the 1st mortgage or other bonded debt of said railroad or said division thereof, and any balance of said several amounts remaining unpaid at the date of the foreclosure and sale of said railroad or said division shall be a first lien thereon, and the said sale shall be made subject thereto."

Upon the 7th day of March, A.D. 1884, the same being one of the days of the February term, 1884, of the court, these orders were suspended by an order of court, the petitioner objecting.

On the 15th day of March, A.D. 1884, the Central Trust Company filed its petition in the cause, which it prayed might be taken as an answer to the intervening petition of Grant, and also as a petition for rehearing and review of the orders of December 22, 1883, which it further asked should be annulled and set aside.

On the 10th day of April, of the April term, 1884, an order was entered in the Circuit Court as follows :

" This day this cause came on further to be heard upon the intervening petition of R. Suydam Grant, filed in this cause October 27, 1883, and the court, being fully advised in the premises, does order, adjudge and decree as follows, to wit :

"The court finds that the two decrees herein made and entered upon said intervening petition on the 22d day of December, A.D. 1883, were entered without notice to the complainant herein and without proof; that the said decrees

are erroneous and unjust to the bondholders for whom said complainant is trustee; that said decrees are not authorized by the pleadings, and are based upon a misrecital of the facts, as evidenced by the record of this cause.

"That said decrees were authorized by the court without examination, in the erroneous belief, entertained at the time, that all the parties in interest had assented to said decrees, and that the parties adversely interested acquired no knowledge of the allowance of said decrees until about the 24th day of February, A.D. 1884, and after the adjournment of the term of court at which the same were entered.

"And thereupon it is by the court, of its own motion, ordered, adjudged and decreed that the said decrees be, and they are hereby, annulled, set aside and held for naught.

"And the court, coming now to determine the question arising upon the said intervening petition of R. Suydam Grant, does order, adjudge and decree as follows, to wit:

"That the relief prayed for in said intervening petition be, and it is hereby, denied except as hereinafter provided.

"And the court does further find that the said petitioner is entitled to fair compensation for the use of said rolling stock described in his said intervening petition by the receiver of this cause upon the railroad of the Cincinnati Northern Railway Company, defendant herein, and for any deterioration by reason of such use.

"But the court defers the determination of the amount of such compensation until the coming in of the report thereon of the master appointed in this cause on the 5th day of April, A.D. 1884.

"And the court does further find that the said petitioner is entitled to take and repossess himself of his said rolling stock, wherever the same may be found, in the possession of the receiver appointed in this cause, or of the receiver appointed in causes Nos. 3576, 3577, 3578 and 3579 in this court.

"And leave is hereby granted to said petitioner to apply at any time to this court for any additional orders that may be necessary in that behalf.

"And the said R. Suydam Grant applied for leave to answer

the petition of the complainant, the Central Trust Company, filed March 15, 1884, and to support his answer by affidavits or other proof, and the court, entertaining the opinion that the answer and affidavits proposed are, by the force of the foregoing decree, rendered unnecessary, declined to grant the leave asked, and refused to permit an answer to said petition for rehearing, on affidavits or other proof in support thereof, to be filed; and thereupon the intervening petitioner, R. Suydam Grant, in open court, prayed an appeal from the foregoing decree, which is disallowed by the court."

Two like orders, *mutatis mutandis*, were entered in case 3578 on the petition of the Grant Locomotive Works and the American Loan and Trust Company, December 22, 1883, and were suspended March 7, 1884, and set aside April 10, 1884, by similar orders to those in No. 3554.

In June, 1884, the Southeastern Division of the Toledo, Cincinnati and St. Louis Railroad Company was sold under a decree of foreclosure, which sale was reported and confirmed July 18, 1884. The Cincinnati Northern Division of the said railroad was sold under a decree of foreclosure and the sale confirmed by order made on July 9, 1884. The decree for the sale of the Southeastern Division provided that unless the railroad company defendant should within ten days pay into court the amount of interest in arrear, and the sum of $20,000 to be applied to the payment of costs and expenses, including the receiver's indebtedness, then the property should be sold, and that upon the sale not less than $20,000 should be paid in cash; and such further portions of the purchase price should be paid in cash as the court should from time to time direct, to meet other claims which the court should adjudge to be prior to the first mortgage, the court reserving the right to resell in case of failure to comply with any order in that regard; and that the balance of the purchase money should be paid either in cash or bonds taken at their net value under the decree. The fund arising from the sale was directed to be applied to the payment: 1st. Of costs, fees and expenses of sale; 2d. Of receiver's expenses and indebtedness, " and to the payment of any other claims which have been or which may be adjudged by

this court in this cause to have priority over said first mort-gage;" 3d. To the payment of the first mortgage bonds.    The decree for the sale of the Cincinnati Northern Division made provisions similar in all respects, except that the amount to be paid for costs and expenses and the amount of the bid to be paid down in cash was $50,000.    The Southeastern Division was sold to N. H. Mansfield and others as trustees for $500,000, and the Cincinnati Northern Division to J. N. Kinney, A. S. Winslow and others for $200,000.    On the confirmation of each of the said sales, it was ordered that the purchasers, upon paying in cash the $20,000 or the $50,000, respectively, should receive a conveyance of the mortgaged property and become subrogated to all the rights thereof of the lien holders, parties to the suit, and that the receivers should thereupon surrender possession of the mortgaged property to such purchasers. Each of the orders of confirmation contained the following clause:

"And it is further hereby ordered, adjudged and decreed that this decree of confirmation of the sale of the premises and property, rights and franchises aforesaid be subject to the terms and provisions of the decree of sale heretofore entered in this cause, whereby it is provided that of the pur-chase price so bid at said sale such further portions thereof, in addition to the said sum of fifty thousand dollars heretofore mentioned, shall be paid in cash as this court might from time to time in this case direct, in order to meet other claims which this court has or hereafter may adjudge in this case to be prior in equity to said first mortgage, and whereby this court did reserve the right to resell in this cause said premises and property, rights and franchises, upon the failure to comply within twenty days with any order of this court in that regard; and the right, title and interest of the said purchas-ers in and to the premises and property, rights and franchises aforesaid by virtue of the said sale, and of this confirmation thereof and of the deed to oe made in pursuance hereof shall be deemed to be acquired subject to said provision."

On the 8th day of February, 1887, the Grant Locomotive Works and R. S. Grant severally filed petitions in the causes

Nos. 3554 and 3578, setting up the matters hereinbefore detailed, and alleging that the orders of April 10, 1884, purporting to annul the decrees of December 22, 1883, were void; that the decrees were still in full force; and praying that the said decrees of December 22, 1883, be adjudged to be in full force and effect, and that the same be carried into execution. The Central Trust Company answered, and the purchasers of the Southeastern and of the Cincinnati Northern Divisions demurred, and on the 11th of June, 1887, the following order was entered on each of said petitions:

"This cause this day was heard upon the petition of R. S. Grant and the Grant Locomotive Works, respectively, herein filed February 8, A.D. 1887, praying that the court set aside certain orders hereinbefore made on the 10th day of April, 1884, setting aside certain other orders theretofore made herein on December 22, 1883, upon the intervening petition of R. Suydam Grant, filed herein on October 27, 1883, and was argued by counsel; and the court being fully advised in the premises, it is ordered, adjudged and decreed that said order of said 10th day of April, A.D. 1884, be, and the same hereby is, set aside and held for naught, and that said orders of December 22, 1883, be, and the same hereby are, restored.

"And thereupon came complainant, The Central Trust Company, and prayed an appeal to the Supreme Court of the United States from this decree setting aside said order of April 10, 1884, and restoring said orders of December 22, 1883, which appeal is allowed upon complainant giving bond in the sum of five hundred dollars for costs, to be approved by the clerk of this court."

The appeals so allowed were never perfected.

January 28, 1889, the intervening petitioners having moved that the purchasers of the railroad property be required to pay into the registry of the court, for the use of the intervenors, the amounts due under the decrees, and that in default thereof the said railroad company property be resold for the benefit of the intervenors, decrees were entered in each case, reciting: "And the said intervenor being present, by his counsel, and the purchasers of the Dayton and of the Cincinnati Divisions

being represented by C. W. Fairbanks, their solicitor, and the Cincinnati, Lebanon and Northern Railway Company, assignee of the purchasers at the foreclosure sale of the Cincinnati Northern Railway, by William M. Ramsey, its solicitor, and the Dayton, Fort Wayne and Chicago Railroad Company, as- signee of the purchasers of the Southeastern Division, and of the purchasers of the Iron Railroad, by John C. Coombs, its soli- citor, and R. D. Marshall, the present receiver of the said railroad company, and the purchasers of the main line, the Toledo Ter- minal, and the St. Louis Division, being present by Clarence Brown, their solicitor, objecting to the jurisdiction of the court, and the complainant, the Central Trust Company of New York, opposing said motion of the said intervenor, being represented by Edward Colston, its solicitor. And, thereupon, pending the hearing upon the said motion, comes the com- plainant, the Central Trust Company of New York, [and prays that its petition for rehearing, filed] on the 15th day of March, 1884, be now heard as a petition for a rehearing of the said decrees of December 22, 1883 ; or, if that relief be denied, that the same be taken and held to be a bill of review, or a bill in the nature of a bill of review ; or, if that relief be denied, that the said petition be amended and supplemented in certain respects, as stated in a certain paper now read, and be now dock- eted as an original bill of review as of the 15th day of March, 1884," which application and each part thereof was denied, and the Trust Company excepted ; and, also, pending the hearing, the Dayton, Fort Wayne and Chicago Railroad Com- pany, as assignee of the purchasers of the Southeastern Divis- ion, prayed leave to intervene and be heard " in review upon the matters of the original orders and decrees entered herein on December 22, 1883, and as set forth in a petition in writing therefor ;" which it moved the court for leave to file herein, which application was denied and the railroad company excepted.

The court, then, having heard argument, decreed that the respective purchasers should make payments into court, within sixty days, of the amounts still due to the intervening peti- tioners, and that in default of such payment the mortgaged

property should be resold. The decrees recited the setting aside, on the 11th of June, 1887, of the orders of the 10th of April, 1884, as void, and that all the orders or decrees entered in pursuance or in execution of the said order of April 10, 1884, were equally void and of no effect, and that the decrees entered on December 22, 1883, were in full force and effect; and ascertained the amounts remaining due, after deducting credits, to the Grant Locomotive Works for locomotives which had been used upon the Southeastern Division, with interest from a date named, and for a locomotive which had been used on the Cincinnati Northern Division; and the amounts remaining due, after deducting credits, to Grant for certain locomotives which had been used on the Southeastern Division, and for a locomotive which had been used on the Cincinnati Northern Division, with interest; and ordered that the amounts should be paid, and upon default thereof the divisions should be sold to realize the said amounts respectively. It was provided also that the decrees were "without prejudice to any right the said intervenors may have to apply for orders to resell other mortgage divisions of the Toledo, Cincinnati and St. Louis Railroad for the payment out of the proceeds of such resale of any balance of the amount hereinbefore named;" and without prejudice to the right of contribution as between the purchasers of the divisions named and the purchasers of other divisions of the Toledo, Cincinnati and St. Louis Railroad. From the orders of January 28, 1889, the Central Trust Company was allowed and perfected appeals to this court, which are here docketed as Nos. 1277 and 1279.

Exceptions to the rulings of the court, denying the motions of the Trust Company that its petitions filed March 15, 1884, be amended and supplemented, and permitted to be filed as original bills of review as of that date, appear in the records.

The Dayton, Fort Wayne and Chicago Railroad Company was allowed and perfected appeals to this court from parts of three of the said orders of January 28, 1889. These appeals are Nos. 1278 and 1280.

On the same 28th of January the Central Trust Company, by its solicitors, filed in the clerk's office of the Circuit Court

its bill of review against the Grant Locomotive Works and the American Loan and Trust Company, stating the filing of its bill of foreclosure October 20, 1883, in No. 3578; the appointment of Craig as receiver; the filing of the bill in No. 3554, and in three other cases; the objects of the five bills; the filing of similar bills in October, 1883, for the foreclosure of mortgages, made respectively by other constituent companies on their respective roads, which roads when connected would form a line of railroad extending from Delphos to Toledo, Ohio, and from Delphos through Indiana and Illinois to East St. Louis, Illinois, in the proper Circuit Courts of the United States for the Northern District of Ohio, the District of Indiana, and the Southern District of Illinois; that the Toledo, Cincinnati and St. Louis Railroad Company was a corporation formed by the consolidation, under the respective laws of Illinois, Indiana and Ohio, of the above-named constituent companies and other companies, extending from St. Louis to Delphos, thence to Toledo, and from Delphos to Cincinnati and Ironton; that each mortgage was a separate and distinct mortgage upon separate property, there being no property in one mortgage included in another; that all of said mortgages were made prior to any consolidation and were entirely unaffected thereby; that on October 27, 1883, the American Loan and Trust Company and the Grant Locomotive Works filed their intervening petition in No. 3578, a copy of which is attached to and made part of said bill of review; that certain orders were entered thereon, set aside, etc., giving the proceedings in detail; that the railroad was sold on foreclosure in No. 3578 in June, 1884, but not subject to any claim or lien for locomotives, and none of the locomotives were included in said sale, but were treated as the property of the Locomotive Works and Grant; that they subsequently took and removed said locomotives; that in February, 1887, the Grant Locomotive Works and Grant filed petitions to set aside the orders of April 10, 1884, and restore the orders of December 22, 1883, which petitions were granted on June 11, 1887, and the orders of April 10, 1884, were set aside and adjudged to be null and void, and the orders of December 22,

1883, were restored; that the Grant Locomotive Works filed its motion in No. 3578, asking for an order that the purchasers of the railroad sold in that case pay into court the several amounts mentioned in the orders of December 22, 1883 ; that thereupon complainant prayed the court to treat such proceedings of March 15, 1884, entitled " petition for rehearing," as a bill of review to correct said orders, and to permit complainant to amend said proceedings of March 15, 1884, by adding thereto the averments contained in this bill of review, and to docket the same as thus amended as an original bill of review as of date March 15, 1884; and that the court refused to allow the same to be done, and ordered, January 28, 1889, the railroad to be sold unless the respective amounts named in the orders of December 22, 1883, should be paid within sixty days by the purchasers of said railroad sold at foreclosure sale in No. 3578. Complainant further says that it was impossible for it to file a bill of review to correct said decrees (of December 22, 1883) at any time between March 15, 1884, and June 11, 1887, because said decrees, by said order of April 10, 1884, had been set aside and annulled, and complainant so regarded them during said period, and moreover it believed, and had the right to believe, that said Grant Locomotive Works and the American Loan and Trust Company and R. S. Grant had abandoned all claim of right under the orders of December 22, 1883 ; and therefore complainant says that said period of time should not have been counted against it in filing its bill of review; that the said orders of December 22, 1883, " are erroneous and ought to be reviewed, reversed and set aside for the many errors and imperfections common thereto, as shown by the record of the said case 3578, that is to say ; " and then follow a number of grounds assigned for the review desired, and special grounds as to each of the orders. Complainant " files herewith a copy of the record in said cases 3554 and 3578, and craves leave to refer to same as part hereof," and prays that the orders be reviewed, reversed and set aside, and that the American Loan and Trust Company and said Grant Locomotive Works may be required to answer the premises, and for general relief. This bill of review was subscribed

and sworn to January 10, A.D. 1889. Process was issued and served on the solicitor of record for the American Loan and Trust Company and the Grant Locomotive Works.

On the 29th day of January, 1889, there came on to be heard the motion of the said Loan and Trust Company and the Grant Locomotive Works, to strike the bill of review from the files, which was argued by counsel, and sustained by the court. From this order the Central Trust Company prayed an appeal to this court, which was granted, and bond given and approved on the 31st day of January, A.D. 1889. The record was filed in this court October 2, 1889, and the cause docketed as number 1281.

On the same 28th day of January the Central Trust Company filed a similar bill of review against R. S. Grant, setting up the prior bill of foreclosure in case No. 3554 and the subsequent proceedings thereon, and on the intervening petition of R. S. Grant, as in the other case, and praying similar relief on the same grounds in respect to the orders of December 22, 1883. This bill of review was likewise stricken from the files on the 29th day of January, 1889, and an appeal prayed to this court, the record being filed herein October 2, 1889, and the cause numbered 1282.

*Mr. B. H. Bristow, Mr. Bluford Wilson* and *Mr. W. S. Opdyke* in support of the motions to dismiss or affirm.

*Mr. Edward Colston* and *Mr. George Hoadly, Jr.,* opposing.

Mr. CHIEF JUSTICE FULLER delivered the opinion of the Court.

The appeals in 1277, 1278, 1279 and 1280 were taken from the orders of January 28, 1889, requiring payment for the use of the Grant Locomotive Works, and R. S. Grant, of the amounts decreed December 22, 1883, (less what had been received in the intermediate period,) and in execution of said decrees, from the purchasers of the Southeastern Division, and from the purchasers of the Cincinnati Northern Division, of the Toledo, Cincinnati and St. Louis Railroad Company.

These purchasers bought subject to the provisions of the decrees, the terms of sale, and the orders confirming the sales, which were the source of their title, and which provided for the payment down of a specified sum in cash, and of such further portions of their bid in cash as might be necessary in order to meet such other claims as the court might adjudge to be prior in equity to the mortgages, with the reservation of a right of resale in case of default in this particular; and the right, title and interest they acquired was expressly made subject to these provisions. Costs, fees and expenses of sale, receiver's expenses and indebtedness, and claims awarded priority, were to be first paid. The balance of their bid they could pay in cash or in first mortgage bonds. That bid, in the instance of the Southeastern Division, was $500,000, and the purchasers were not required by the orders in question to pay any amount in excess thereof. Neither the purchasers of the Cincinnati Northern Division, nor their assignee, the Cincinnati, Lebanon and Northern Railway Company, took any appeal.

It does not appear to us that the Dayton, Fort Wayne and Chicago Railroad Company, the assignee of the purchasers of the Southeastern Division, has an appealable interest in the premises.

The purchasers were bound to pay such portions of their bid in cash as the court might direct, to meet other claims, and whether the payments of their bids were to be made for the benefit of the bondholders, or partly for the bondholders and partly for the benefit of the appellees, it is clear that they, as purchasers, and the railroad company, as their assignee, had no interest in the matters affected by the decrees appealed from.

In *Swann* v. *Wright's Executor*, 110 U. S. 590, 601, Swann had purchased the railroad under a decree, which provided that the sale should be subject to the liens already established, or which might be established on references then pending, as prior and superior to the lien of the mortgage, and the claim of Wright was one of this class. It was pending before the master and reported on after the sale, when the purchaser applied to oppose its confirmation, and was not allowed to do so; and the sale was afterwards confirmed, expressly subject

to all liens established as specified in the decree of sale. Swann afterwards filed a bill to set aside Wright's claim, for fraud in its inception, which was dismissed, and the dismissal affirmed on the ground that the property was purchased expressly subject to all established claims, or claims that might be established on references then pending, which included Wright's. "If the court," observed Mr. Justice Harlan, delivering the opinion, "had in the decree of sale reserved to the purchaser, although not a party to the proceedings, the right to appear and contest any alleged liens then under examination, and, therefore, not established by the court, an entirely different question would have been presented. But no such reservation was made; and the purchaser was required, without qualification, to take the property, upon confirmation of the sale, subject to the liens already established, or which might, on pending references, be established as prior and superior to the liens of the first mortgage bondholders. . . . All that we decide is, that in view of the express terms of the decree of sale, and since neither the purchaser nor his grantee proposes to surrender the property to be resold for the benefit of those concerned, such purchaser has no standing in court for the purpose of re-litigating the liens expressly subject to which he bought and took title."

In *Stuart* v. *Gay*, 127 U. S. 518, under a decree for the foreclosure of certain liens, which contemplated the payment of the purchase money, on the sale, in money, in annual instalments, Stuart purchased, and by a subsequent order was allowed to be credited on unpaid purchase money with various liens he had acquired. From a later order in respect to allowances of interest upon certain prior liens he appealed to this court, and it was held that he had no appealable interest, as a purchaser of the property, because it was a matter of indifference to him as such how the proceeds of the sale should be distributed among the creditors.

It is argued, however, that the purchase of the Southeastern Division was not made subject to the decrees of December 22, 1883, because it is said that at the time of the purchase "these decrees were dead and thought to be beyond

resurrection;" and "that a purchaser buying under such circumstances ought to have the right to resist their reappearance." This would hardly be contended if the orders of April 10, 1884, were void for want of jurisdiction to enter them. Those orders were not made upon a bill of review or a bill in that nature, nor upon any petition for rehearing, which under equity rule 88 could not then have been filed if the decrees of December 22, 1883, were final and appealable. On March 15, 1884, the Central Trust Company filed certain petitions which it asked might be treated as petitions for rehearing or in review, but the court made no order in regard to them, and did not predicate its action upon them. On the contrary, it was specifically set forth that the orders of December 22, 1883, were annulled and set aside "by the court of its own motion."

If these orders were final decrees, the court could not vacate them of its own motion after the close of the October Term, 1883. *McMicken* v. *Perin*, 18 How. 507, 511. We think they were final. They determined the ownership of the locomotives and the right to their possession; that they were essential to the operation of the roads by the receiver, and should be purchased by him; that certain designated amounts should be paid for the rentals and the purchase price, which amounts were made a charge upon the earnings, income and property of the Toledo, Cincinnati and St. Louis Railroad Company, and especially of the particular divisions named; and that the amounts should be paid by the receiver, and any balance remaining unpaid at the date of the foreclosure and sale of the railroad, or the particular division, should be a first lien thereon and the sale be made subject thereto. They were, therefore, final in their nature, and made upon matters distinct from the general subject of litigation, the foreclosure of the mortgages.

In *Trustees* v. *Greenough*, 105 U. S. 527, an appeal from an order for the allowance of costs and expenses to a complainant, suing on behalf of a trust fund, was sustained. In *Hinckley* v. *Gilman, Clinton & Springfield Railroad Company*, 94 U. S. 467, a receiver was allowed to appeal from a decree against him to pay a sum of money in the cause in which he was appointed. In *Williams* v. *Morgan*, 111 U. S. 684, a decree

in a foreclosure suit, fixing the compensation to be paid to the trustees under a mortgage from the fund realized from the sale, was held to be a final decree as to that matter; and in *Fosdick* v. *Schall*, 99 U. S. 235, a decree upon an intervening petition in respect to certain cars used by a railroad company under a contract with the manufacturer was so treated. There was a fund in court in that case, but in principle the orders here are the same. And see *Farmers' Loan & Trust Co., Petitioner*, 129 U. S. 206, 213.

The decrees of June 11, 1887, were clearly right in adjudicating the orders of April 10, 1884, to be of no effect, and reinstating the prior decrees.

Even if the orders of April 10, 1884, were voidable merely, the purchasers should have made the defence now suggested, of reliance upon them, when the application was made which resulted in the decrees of June 11, 1887. They did indeed appear and file a demurrer, but they made no resistance upon the merits, and they certainly prayed no appeal from the decrees then entered.

The result is that the appeals of the Dayton, Fort Wayne and Chicago Railroad Company, Nos. 1278 and 1280, must be dismissed.

Turning to the appeals of the Central Trust Company, it is strenuously argued, in support of the motions to dismiss, that as the decrees of January 28, 1889, affected the purchasers only, the bondholders as such had no further interest in the litigation, nor had their representative, the Trust Company; that at least the record does not definitely show that either the Trust Company or the railroad company had certainly an interest; that though one or the other may have had, it is not sufficiently clear which it is; and that, therefore, the appeals of both must be dismissed. It is enough that sufficient color is given to the motions to enable us to pass upon the motions to affirm.

The orders of January 28, 1889, which are alone appealed from, were merely in execution of the former decrees, and as such we do not find that any error supervened in their rendition. The amounts named were not disputed and could not

have been, except in respect to credits, as to which there was no controversy, inasmuch as those amounts had been previously determined, and their payment decreed; and the resale had been expressly provided for in the foreclosure decrees and the order of confirmation.

The action of the Circuit Court in refusing to allow the Trust Company to amend and supplement its petitions of March 15, 1884, and file them as original bills of review as of that date, and in denying the application of the Dayton, Fort Wayne and Chicago Railroad Company to intervene and file a petition in the cases in review of the orders of December 22, 1883, was taken in the exercise of a discretion with which we are not justified in interfering. *Buffington* v. *Harvey*, 95 U. S. 99; *Brockett* v. *Brockett*, 2 How. 238; *Mellen* v. *Moline Iron Works*, 131 U. S. 352.

No appeal having been prosecuted from the orders of December 22, 1883, or those of June 11, 1887, and the appeals from the orders of January 28, 1889, only, not bringing the former orders before us for revision, we are constrained to sustain the motions to affirm in Nos. 1277 and 1279, without entering upon the consideration of the errors so earnestly urged as existing in the December decrees.

It remains to dispose of the motions in Nos. 1281 and 1282. These are appeals from orders of the Circuit Court striking from the files two bills placed there on the 28th of January, 1889, by the Central Trust Company, to review the decrees of December 22, 1883, for errors apparent.

Reference is made to the records in the cases 3554 and 3578, and we do appellant no injustice in assuming that these bills, verified January 10, 1889, are the same presented to the Circuit Court when application was made in those cases for leave to amend and supplement appellant's petitions of March 15, 1884, and docket the same as bills of review of that date. That application having been denied, appellant put these papers on file as the court was entering the other orders. Here again, while the motions to dismiss will not be sustained, we hold there was color for them.

The bills are not based upon new matter or newly discov-

ered evidence, and no leave was given to file them. They are clearly bills for the review of the orders of December 22, 1883, for errors apparent of record. Such bills must ordinarily be brought within the time limited by statute for taking an appeal from the decree sought to be reviewed. *Thomas* v. *Harvie's Heirs*, 10 Wheat. 146; *Ensminger* v. *Powers*, 108 U. S. 292, 302. Over five years had elapsed, but it is insisted that the time between the 10th of April, 1884, and the 11th of June, 1887, when the orders of April 10, 1884, were declared void, ought not to be considered in passing upon this question, because of appellant's belief in the validity of and reliance upon those orders and the acquiescence of appellees therein.

It seems to us that appellant was not justified in such belief and reliance, and that, at all events, after the orders of June 11, 1887, it should have moved promptly by way of appeal or bill of review. These bills attack the orders of December 22, 1883, merely, and not the decrees of June 11, 1887, reinstating the former as in full force and effect.

The rule laid down in *Thomas* v. *Harvie's Heirs* is based upon the principle of discountenancing laches and neglect. Under all the circumstances, we cannot concede that appellant acted in apt time, and must therefore affirm the orders of the Circuit Court striking the bills from the files.

*The appeals in Nos.* 1278 *and* 1280 *are dismissed and the decrees in Nos.* 1277, 1279, 1281 *and* 1282 *are affirmed.*