BLYTHE CO. v. HINCKLEY et al.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1901.)

No. 661.

1. APPEAL—QUESTIONS REVIEWABLE.

An appeal in equity brings up the whole case, and any matter of law apparent on the face of the record is open to the consideration of the court. The appellee may insist on a ground of demurrer to sustain a decree dismissing the bill, although such ground was overruled by the court below.

2. BILL OF REVIEW—TIME FOR FILING.

Under the settled rule of courts of equity of the United States that a bill of review must be filed within the time allowed by statute for an appeal, an attempted appeal to the supreme court in a case in which no appeal to that court is allowed by law does not operate to suspend the running of the time within which a bill of review may be filed, and such bill must be filed within the six months allowed for taking an appeal to the circuit court of appeals.

Appeal from the Circuit Court of the United States for the Northern District of California.

This is an appeal from the judgment of the circuit court (84 Fed. 228) dismissing a bill filed therein to review a pro confesso decree of the same court entered December 22, 1897, for alleged errors appearing upon the face of the record. The suit which was the foundation of the proceedings in the court below was one branch of the long-pending contest over the large estate left by the late Thomas H. Blythe, and was initiated in the circuit court by the filing on the 3d day of December, 1895, by John W. Blythe, alleging himself to be a citizen of the state of Kentucky, and Henry T. Blythe, alleging himself to be a citizen of the state of Arkansas, against Florence Blythe Hinckley, Frederick W. Hinckley, her husband, and the Blythe Company, therein alleged to be citizens of California, of a complaint entitled, "Complaint to Quiet Title," in which it is alleged that the plaintiffs are the owners, as tenants in common with each other, of that certain piece of land situated in the city and county of San Francisco known as the "Blythe Block," "and also all those various tracts and parcels of land in the county of San Diego, state of California, amounting in all to forty thousand acres of land, more or less, and standing of record in the county recorder's office of said San Diego county in the name of Thomas H. Blythe, now deceased"; that the defendants to the suit claim that they have or own adversely to the plaintiffs some interest in the property, which claims the plaintiffs allege are false and groundless, and constitute a cloud upon the plaintiffs' title. The prayer of the complaint is that the defendants be required to set forth and produce their claims, and that it be adjudged by the court that the defendants to the suit have no right or title to any part of the property described, and the plaintiffs' alleged title be adjudged good and valid as against the defendants, and each of them. Seven days thereafter the complainants in that suit filed an amended complaint containing, in addition to the allegations of the original complaint, the averments that the Blythe Company is a corporation organized and existing under the laws of the state of California, and having its office and principal place of business in the city and county of San Francisco, and that each of the defendants is a resident of the Northern district of California, and that at the time of the commencement of the suit neither one of the parties was in possession of any part of the lands involved therein. Upon this amended complaint a summons was issued, and on December 21, 1895, served upon George W. Towle, Jr., attorney for the Blythe Company, and personally served upon the defendants Florence Blythe Hinckley and Frederick W. Hinckley, her husband. The Blythe Company answered the amended bill on the 28th day of December, 1895, in which answer, after denying, among other things, that the plaintiffs, or either of them, are the owners or tenants in common with each other, or otherwise, of any part of the lands in controversy, "as and for a cross complaint of defendant the Blythe Company against said plaintiffs, John Wesley Blythe and Henry Thomas Blythe, and each of them," alleges, among other things, that the Blythe Company is the owner of the lands in controversy; that no part of them was in the possession or control of any party to the suit at the time of the commencement of the action; that the plaintiffs, John Wesley Blythe and Henry Thomas Blythe, claim some interest therein adverse to the alleged ownership of the Blythe Company, which claims the cross complainant alleges to be false and groundless, and prays judgment accordingly against the plaintiffs, and also "that it be adjudged herein that defendants Florence Blythe Hinckley and Frederick W. Hinckley, her husband, are not, and that neither of said defendants is, the owner of or the holder of any interest in the lands in said complaint described, or any thereof; that the defendant the Blythe Company have judgment that it is the owner of said lands in said complaint described, and all thereof." On the 30th day of December, 1895, Florence Blythe Hinckley and Frederick W. Hinckley appeared specially, by leave of the court, and moved to quash the service of summons issued upon the amended complaint, on the ground that the suit was one that is only cognizable in a court of equity, and that the proper process to be issued in such a suit is that of subpœna. That motion was granted February 10,

1896. Thereafter a subpœna was issued upon the amended complaint and served upon the defendants Hinckley, who on November 2, 1896, entered a general appearance to the suit, and on December 14, 1896, filed a plea in bar thereto, alleging that the statement in the amended bill of complaint that the complainants are the owners, as tenants in common with each other, of the lands therein described, is based solely upon the claim that they are the lawful heirs and next of kin of Thomas H. Blythe, deceased, and that upon his death they inherited and acquired by succession the title to the real property described in the bill of complaint. The plea alleged that Thomas H. Blythe died intestate in San Francisco on the 4th day of April, 1883, and that at and before his death he was a citizen of the United States, and the owner of the real estate in controversy. It then proceeds to set forth in detail the probate proceedings in the superior court of San Francisco in the matter of the estate of Blythe, and the proceedings of that court upon the petition of Florence Blythe under the provisions of section 1664 of the Code of Civil Procedure of California, in which proceedings it was on October 22, 1890, adjudged and decreed that Florence Blythe (subsequently Florence Blythe Hinckley) was the child of Thomas H. Blythe, deceased, and that he legally adopted her as his lawful child and heir, and that as such she was the owner of all the estate of Thomas H. Blythe, deceased, wherever situated, and the only person entitled to have and receive distribution of his estate. The plea also recited proceedings on appeal to the supreme court of the state from that judgment, and its affirmance by the supreme court, and also the subsequent proceedings in the probate court, resulting in a decree distributing the estate of Thomas H. Blythe to Florence Blythe Hinckley; an appeal from that decree to the supreme court of the state, and its affirmance. The plea further alleged that on December 4, 1894, and prior to the commencement of the suit in which it was interposed, the possession of the whole of the property in controversy had, under that decree of distribution, been delivered to Florence Blythe Hinckley, since which time she has continued in its actual possession; and the plea prayed the judgment of the court in the premises. It was not by the complainants set down for argument, nor was issue joined thereon by them; but on January 14, 1897, they filed in the suit, by leave of the court, a "second amended and supplemental bill in equity," in which they omitted all reference to any of the property except the Blythe Block, and in which they alleged that Boswell M. Blythe, a citizen of California, and resident at Downey, in that state, was one of the heirs at law of Thomas H. Blythe, and was entitled to have some share in his estate, but by reason of his citizenship he could not be joined as complainant in the bill, and he was therefore made a defendant, in order that his rights might be protected; and this second amended and supplemental bill proceeded to set forth the substance of the proceedings in the state courts with respect to the estate of Thomas H. Blythe, substantially as contained in the plea of Florence Blythe Hinckley and Frederick W. Hinckley, and alleged further that the defendant Florence was born in England, the bastard child of an unmarried woman; that at the time of her birth her mother was a resident of England, and a subject of Victoria, queen of Great Britain and Ireland; that she remained in England at all times until after the death of Thomas H. Blythe; that she came to California for the first time in 1883; that she was then an infant, about 10 years of age, ineligible to become a citizen of the United States, and when she arrived in California was a nonresident alien. The second amended and supplemental bill then refers to the treaty of 1794 between Great Britain and the United States, sections 17 and 22 of article 1 of the constitution of the State of California, and sections 671, 672, and 1404 of the Civil Code of California, relating to the rights of foreigners and aliens to take real estate by succession as heirs at law of deceased citizens of the state, and then alleges, in various forms, that the superior court of San Francisco was without jurisdiction to adjudge or decree that Florence Blythe was capable of inheriting the real estate as heir at law of Thomas H. Blythe; that at the time of the commencement of the suit neither party thereto was in possession of the land situated in San Francisco, but that the same was in the possession of the public administrator of that city and county; that on October 26, 1894, the

superior court of the city and county of San Francisco entered a decree of distribution, wherein all the real property belonging to the estate of Thomas H. Blythe, deceased, was distributed to Florence Blythe Hinckley, and that on December 4, 1894, possession thereof was delivered to her; that the property situated in San Francisco is covered with stores and tenements, which are much used and in great demand as places of business, yielding a monthly rental of about $12,000, which the defendant Florence receives each month; that on January 18, 1896, the superior court of the city and county of San Francisco granted a final decree of distribution, wherein the residue of the estate remaining in the hands of the public administrator, amounting to $89,842.94 (being the rents accrued from the real property), was distributed to the defendant Florence. The prayer of the second amended and supplemental bill is that the title of the complainants to the real estate be quieted, and that they be let into the possession thereof; that as to the defendants Florence Blythe Hinckley and Frederick W. Hinckley, her husband, an account of the rents and profits which had been received, or which might thereafter be received up to the final hearing, by the defendant Florence, or any one claiming under her, be taken, and, upon the coming in of the report and the confirmation thereof, the amount be adjudged and decreed to the complainants. On the 1st day of February, 1897, the Blythe Company filed an answer to this second amended and supplemental bill, in which the material allegations thereof were put in issue, and the alleged heirship of the grantors of the Blythe Company to the estate of Thomas H. Blythe set forth.

On the 15th day of February, 1897, the defendant Florence Blythe Hinckley (her husband, Frederick W., having died on the 6th day of that month) appeared specially, by leave of the court, and made two motions: (1) A motion to strike from the files the last-mentioned pleading of the Blythe Company, on the ground, among others, that it could not be determined therefrom whether it was intended as an answer or a cross bill, or both an answer and a cross bill; that, if it was intended as a cross bill, no defendants were named; that it contained no prayer for a subpœna or for any process; and that it was not signed by counsel or by the Blythe Company. (2) A motion to strike out certain portions of the pleadings (in the event the first motion should be denied) on the ground, among others, that in the matter alleged it was attempted to introduce a new controversy into the suit, and one wholly distinct and separate from that mentioned and set forth in the bill and a controversy between the defendant the Blythe Company and the defendant Florence Blythe Hinckley, who were citizens of the same state. The order of the court granting the defendant Florence Blythe Hinckley leave to appear and make these two motions contained the further order "that no further appearance in respect to said pleading so filed by said Blythe Company need be entered by said defendant Florence Blythe Hinckley until 10 days after her solicitor herein is served with written notice of the decision of the court on her said motion, and then only if said motion should not be sustained in whole or in part; and, for like cause, said defendant is hereby granted ten days after her solicitor herein is served with written notice of the decision of her said motion in which to enter a general and further appearance to said pleading, and to file any further motion, plea, demurrer, or answer in said suit in relation thereto, and then only if said motion should not be sustained." On the same day that the foregoing proceedings were had with respect to the pleadings of the Blythe Company, the defendant Florence Blythe Hinckley made a motion to dismiss the complainants' suit on the ground that the court had no jurisdiction of the cause of action stated in the bill of complaint, and because the defendant Boswell M. Blythe and the defendant Florence Blythe Hinckley were citizens of the same state; that Boswell M. Blythe was interested wholly on the same side of the controversy in the suit with the complainants, and was therefore to be regarded as one of the complainants. On the 16th day of February, 1897, the Blythe Company, by leave of the court, filed in the suit a cross bill, making John W. Blythe, Henry T. Blythe, Boswell M. Blythe, and Florence Blythe Hinckley defendants thereto, therein alleging the same facts that it had theretofore alleged in its answer to the second amended

and supplemental bill as the basis of its alleged title to the lands in controversy and to the rents thereof, and therein also alleging the death since February 1, 1897, of Frederick W. Hinckley, and praying that the process of subpœna be issued thereon and directed to the defendants named, and for a decree in favor of the Blythe Company for the possession of the lands described in the cross bill, together with the rents, issues, and profits thereof, and that the complainants John W. Blythe and Henry T. Blythe and the defendants Boswell M. Blythe and Florence Blythe Hinckley, and all persons claiming by or through them, or any of them, be forever enjoined from asserting any title to or interest in any part of the property in controversy adverse to the cross complainant. On the 26th day of February, 1897, the complainants John W. and Henry T. Blythe obtained from the court an order dismissing the suit against the Blythe Company; but on the following day, on the application of the solicitor for that company, that order was vacated, without prejudice, however, to a renewal of the motion by the complainants at any time, should they be so advised. Subpœnas were issued on the cross bill of the Blythe Company, the return day of which was April 5, 1897, one of which was returned to the court with the following indorsement:

"United States Marshal's Office, Northern District of California.

"I hereby certify that I received the within writ on the first day of March, 1897, and personally served the same on the first day of March, 1897, on Florence Blythe Hinckley, by delivering to and leaving with Mrs. Harry Hinckley, an adult person, who is a resident of the place of abode of Florence Blythe Hinckley, said defendant named therein, at the county of Alameda, in said district, an attested copy thereof, at usual place of abode of said Florence Blythe Hinckley, one of said defendants herein.

"San Francisco, March 2d, 1897.

"Barry Baldwin, U. S. Marshal,

"By H. M. Moffatt, Office Deputy."

The other subpœnas were returned by the marshal unserved as to the defendants John W. and Henry T. Blythe; the marshal certifying thereon that, after due and diligent search, he was unable to find either of them in his district. On the 4th day of March, 1897, the solicitor for the Blythe Company stipulated that the complainants in the suit need not file their replication to the answer the company had interposed to the second amended and supplemental bill until the expiration of 10 days after notice had been given by the Blythe Company that the replication was required. He also stipulated that the complainants need not plead or move to the cross bill filed by the Blythe Company until further notice from that company. On the 8th day of April, 1897, the Blythe Company procured an order that an alias subpœna issue upon its cross bill, directed to the defendants Blythe therein, and that service of the subpœna be made upon them by delivering a copy thereof to the solicitors who appeared for them in the bills filed by them; and pursuant to that order such alias subpœna was issued, the return day of which was May 3, 1897, and was by the marshal served, in the Northern district of California, upon such solicitors, on the 9th day of April, 1897, and was by him returned on the 22d day of April, 1897, with his indorsement of such service thereon. The service of the subpœna on the complainants, John W. and Henry T. Blythe, to appear and answer the cross bill of the Blythe Company, was accompanied by a notice from its solicitor to the effect provided for by the terms of his stipulation of March 4, 1897. No appearance having been entered by or for Florence Blythe Hinckley, in response to the subpœnas so issued and served, on or before the return day thereof, the solicitor for the Blythe Company caused to be entered on the 6th day of April, 1897, in the order book of the court, a rule taking the cross bill pro confesso as to Florence Blythe Hinckley; and on May 4, 1897, a similar order was entered in the rule book, taking the cross bill as confessed against John W. and Henry T. Blythe. Seven days prior to the entry of the last-mentioned order, however, to wit, on the 28th day of April, 1897, the solicitors for the complainants, John W. and Henry T. Blythe, served a notice on the solicitor for the Blythe Company that on May 3, 1897, they would move the court to set aside and rescind the order entered on February

27, 1897, which vacated and set aside the previous order of February 26, 1897, dismissing the suit as to the Blythe Company, and would move the court to reinstate and give force and effect to the said prior order of dismissal, and that the suit stand dismissed as to the Blythe Company, and would also move the court to set aside the order of April 8, 1897, directing that the subpœna issued upon the cross bill of the Blythe Company be served upon the complainants, John W. and Henry T. Blythe, by delivering a copy to their solicitor. On the 3d day of May, 1897, the complainants, John W. and Henry T. Blythe, petitioned the court for leave to appear specially for the purpose of making these motions, which petition was granted by an order which further directed "that no further appearance in respect to said pleading so filed by said Blythe Company need be entered by said complainants, John W. Blythe et al., until 10 days after the solicitors of said complainants are served with written notice of the decision of the court upon said motion, and then only if said motion should not be sustained in whole or in part. And, for the like cause, said complainants are hereby granted 10 days after their solicitors are served with written notice of the decision upon their said motion in which to enter a general and further appearance to said pleading, and to file any further motion, plea, demurrer, or answer in said suit in relation thereto, and then only if said motion should not be sustained; and it is further ordered that a copy of this order be served upon the solicitor for said the Blythe Company herein." When these motions were called for hearing on May 3, 1897, they were, upon the application of the solicitor for the Blythe Company, continued to May 10, 1897, on which day they were again called, and the motion to dismiss the suit as to the Blythe Company was heard; the solicitors for the complainants appearing and submitting arguments in its support, and the solicitor for the Blythe Company appearing and submitting argument in opposition thereto; and thereupon leave was granted to both sides to file briefs. The motion to quash the substituted service was continued. On the same day, to wit, May 10, 1897, the solicitor for the Blythe Company filed amendments to its cross bill, and obtained an order from the court that the cross bill should stand amended in the manner specified, and the several parts specified be stricken therefrom and withdrawn. The changes made by these amendments in the cross bill consisted of the abandonment and withdrawal of all reference to the property situated in San Diego county, and the dismissal of the cross bill as to the defendant Boswell M. Blythe. On June 1, 1897, the complainants, John W. and Henry T. Blythe, by leave of the court, amended their second amended and supplemental bill by striking out the name of Boswell M. Blythe as a party defendant, but leaving therein the allegation as to his being an heir of Thomas H. Blythe, deceased, with this explanation: "But, as the said Boswell M. Blythe resides out of and beyond the jurisdiction of the court, your orators state the facts concerning him." No new rule taking the cross bill as amended pro confesso was entered in the rule book; but on July 1, 1897, the solicitor for the Blythe Company filed his own affidavit, showing that the subpœna issued on the cross bill was served on Florence Blythe Hinckley, in the Northern district of California, on the 1st day of March, 1897; that no appearance had been entered by or for her, and the time for her appearance had not been enlarged; that a decree pro confesso had been entered in the rule book; that the alias subpœna issued upon the cross bill was served pursuant to the order of the court upon John W. and Henry T. Blythe, returnable on the first Monday of May, 1897; that no appearance had been entered by or for them, and the time of their appearance had not been enlarged; and that a decree pro confesso had been entered in the rule book. Thereupon an order was entered by the court that the cross bill of the Blythe Company be taken pro confesso, and that the judgment and decree of the court be entered accordingly.

On July 3, 1897, a decree in conformity with this order was entered in favor of the Blythe Company, and the court soon thereafter, and on the same day, adjourned for the term. The decree so rendered and entered adjudged, among other things, that the Blythe Company was at the time of the filing of its cross bill of complaint, and still is, the sole owner of, and entitled to the immediate possession of, the Blythe Block (specifically de-

scribing it), together with the rents, issues, and profits thereof, and that it be let into the immediate possession of the property; that at the time the suit was commenced. by John W. and Henry T. Blythe none of the parties to the suit was in possession of any part of the property; that since the suit was commenced Florence Blythe Hinckley wrongfully obtained possession of the Blythe Block, and now holds wrongful possession of the whole of it; that the property is of the value of more than $3,000,000, and is occupied by more than 100 tenants, who pay monthly a stipulated sum to Florence as rent therefor, and that the total amount of such rentals has been and is the sum of $12,000 a month; that all debts and claims against the deceased, Thomas H. Blythe, have been fully paid from the rents, issues, and profits of the property; that the respondents to the cross bill, Florence Blythe Hinckley, John W. Blythe, and Henry T. Blythe, and all persons claiming by or through them, or either of them, be, and they are, and each of them is, forever enjoined from asserting any interest in the property adverse to the ownership of the Blythe Company; that Thomas H. Blythe was from the year 1855 to and including the 4th day of April, 1883, a citizen of the United States, and of the state of California, and that during all of that time he was a resident of that state, and was during all of that time the owner and in possession of the Blythe Block, and was such.owner and so possessed at the time of his death; that he died intestate, and leaving surviving neither father nor mother nor brother nor sister nor wife nor child nor issue nor off- spring; that he never entered into, made, or executed any contract. marriage or otherwise, or did any act, wherein or whereby his title to the property was in any wise limited; that he was never married, and never adopted or legitimated any child; that he never, by any writing or writings signed in the presence of any witness or witnesses, or otherwise, or at all, acknowl- edged himself to be the father of any child; that he never made or signed or executed or subscribed any writing for the purpose of making, or with the intent to thereby or otherwise or at all make, any child his heir, or for the purpose of making any child, or with intent to thereby or otherwise or at all cause any child to be, or to be considered as, his heir, and that he never signed any paper whereby any child was made his heir; that from the year 1873 to and including the day of his death he had and maintained in the city and county of San Francisco, but not elsewhere, a household and home and a family, consisting of himself and his servants, and that no child was ever received into such household or home or family, and that he never publicly acknowledged himself to be the father of any child, never received any child into his family, and never treated any child as if it was his legitimate child; that he never did, in the state of California or else- where, appear before the judge of any superior or other court with or at the same time as any child; that Florence Blythe Hinckley was born in or about the year 1873, the illegitimate child of an unmarried woman; that at the time of the begetting and of her birth her progenitors were, and for generations prior thereto had been, each and all subject to and subjects of Victoria, queen of the United Kingdom of Great Britain and Ireland, and then were, and for many generations prior to her birth had been, continu- ously residents of the United Kingdom; that, prior to the death of Thomas H. Blythe, Florence Blythe Hinckley had not been, and no one of her pro- genitors had ever been, outside of the territorial limits of that kingdom; that the law of the state of California, as embodied in sections 230 and 1387 of its Civil Code, is not, and never has been, the law in the United Kingdom of Great Britain, nor has there ever been in the United Kingdom any law of adoption, nor any law by which an illegitimate child could, by an acknowl- edgment in writing or otherwise, be instituted as or become the heir of a person, or any law by which an illegitimate child could be adopted as the child or heir of its putative father; that certain named persons were at the time of the death of Thomas H. Blythe his next of kin and his only heirs at law, and that they, as such heirs at law, were entitled to inherit and succeed to, and did inherit and succeed to, the Blythe Block, and that all their right, title, interest. succession, and estate therein was prior to the 1st day of November, 1887, sold and conveyed to the Blythe Company in fee, which is now the sole owner thereof, and entitled to its immediate pos-

111 F.—53

session, together with the rents, issues, and profits thereof; and that each and all of the claims of John W. Blythe, Henry, T. Blythe, and Florence Blythe Hinckley are false and groundless. At the time this default decree was entered there were pending before the court, undetermined, the following of the motions hereinbefore mentioned: (1) The motion of the defendant Florence Blythe Hinckley to strike from the files the answer of the Blythe Company to the complainants' second amended and supplemental bill; (2) the motion of the same defendant to strike out certain portions of the answer of the Blythe Company; (3) the motion of the same defendant to dismiss the complainants' suit; (4) the motion of the complainants to dismiss the suit as to the Blythe Company; (5) the motion of the complainants to quash the substituted service of the subpœna issued upon the cross bill. The first, second, third, and fourth motions had been argued and submitted; the last briefs having been filed on the first and second motions on April 30, 1897, on the third motion on May 22, 1897, and on the fourth motion on June 25, 1897.

The bill of review, from the judgment dismissing which the present appeal is taken, challenges the validity of the subsequent proceedings in the cause, now to be mentioned:

On the 7th day of July, 1897, Florence Blythe Hinckley presented to the circuit judge, in chambers, her verified petition for the vacation of the judgment of July 3, 1897, on the ground that she had never been served with any process, or received a copy of any process, issued upon the cross bill of the Blythe Company; that she had never seen nor received the cross bill, or a copy thereof; that no cross bill, or any copy thereof, or any process, or any copy of any process, had ever been delivered to her, or left at her dwelling house or usual place of abode, with any adult person who was ever a member of or resident in her family. The prayer of her petition was that the court "make an order to set aside and vacate the order made by it on the 3d day of July, 1897, adjourning said court for the term sine die, to the end that this petitioner may have an opportunity to be heard upon her application to set aside the judgment hereinbefore stated to have been entered against her; that this court set aside and vacate the judgment so entered against your petitioner on the 3d day of July, 1897; and that all proceedings upon and under such judgment be stayed." The petition was supported by affidavits of her solicitors to the effect that prior to July 6, 1897, they had no knowledge that a subpœna or any other process had ever been issued upon the cross bill filed by the Blythe Company; that they had no knowledge or information that a default had been entered against Florence Blythe Hinckley, or that an order had been made that the cross bill should be taken pro confesso. At the same time and place, to wit, July 7, 1897, John W. and Henry T. Blythe presented to the judge their motion "to vacate the decree of July 3, 1897, against the complainants and in favor of the Blythe Company, and ask that the order of adjournment of July 3, 1897, be set aside, and that it can be opened, and complainant be granted leave to present affidavits in support of its motion." Upon these proceedings the judge thereupon caused the court to be opened, and to be entered in the minutes of the court the following:

"Wednesday, July 7, 1897.

"Good and sufficient reasons appearing therefor, the order of adjournment of this court sine die entered July 3, 1897, was this day, by the Honorable William W. Morrow, Circuit Judge, ordered vacated and set aside. Court was thereupon opened for the transaction of business. Present: Honorable William W. Morrow, Circuit Judge; Southard Hoffman, Clerk; and Barry Baldwin, Marshal.

"John W. Blythe et al. vs. Florence Blythe Hinckley et al.   (No. 12,144.)

"Order Staying Proceedings Under Decree of July 3, 1897. Etc.

"In the above-entitled cause, application for relief having been made on behalf of the defendant Florence Blythe Hinckley, and a petition and affidavits having been filed on her behalf, and counsel for all the parties hereto being present, and having been heard, and Mr. Towle, counsel for the Blythe Company, having objected to the setting aside of the order of July 3, 1897,

adjourning this court sine die, and to the opening of the court this day, and
to any proceedings whatsoever, for want of jurisdiction, and having reserved
all objections, and it appearing that the decree entered July 3, 1897, herein,
against the defendant Florence Blythe Hinckley, was inadvertently made
and entered, and upon a misunderstanding as to the facts as to service of
process upon her, which would not have been done but for such misunder-
standing: Now, therefore, it is hereby ordered that said order adjourning
this court for the term be, and the same is hereby, set aside, and the de-
fendant Florence Blythe Hinckley is permitted to file her said petition and
affidavits, and the hearing of the same is continued until the first day of the
next term of this court, and all proceedings upon the decree of July 3d,
1897, are hereby stayed until the further order of the court, and all matters
relating to said decree are hereby reserved until the further order of the
court. Mr. L. D. McKisick and Mr. E. B. Holladay, counsel for the complain-
ants herein, moved the court for leave to file affidavits and motion on behalf
of complainants to set aside said decree of July 3, 1897, herein, which motion
was granted; and, said affidavits and motion having been filed, it was or-
dered that the hearing of said motion be, and hereby is, postponed to the
first day of the next term of this court."

The first day of the succeeding term of the court was July 12, 1897, at
which time the hearing of the petition of Florence Blythe Hinckley and the
motion of John W. and Henry T. Blythe was continued to August 3, 1897.
On the 22d of July, 1897, the Blythe Company filed a petition asking that
the minutes of July 7, 1897, be corrected by expunging therefrom all of the
entries made therein on that date; and on July 28, 1897, Florence Blythe
Hinckley filed a notice of motion to vacate the pro confesso decree, together
with the rule taking the same pro confesso, as also the order of the court
directing the entry of the decree, upon various grounds, a copy of which
was served upon the solicitor for the Blythe Company; and on the same day
she filed a notice of motion for leave to amend her petition of July 7, 1897,
together with a statement of the proposed amendments, and an affidavit
that a copy thereof had been served upon the solicitor for the Blythe Com-
pany. On July 30, 1897, the Blythe Company procured an order granting it
leave to appear specially to object to any proceedings being had upon the
petition and motion of July 7, 1897, and on the 31st of July, 1897, filed its
objections thereto. On the 2d day of August, 1897, John W. and Henry T.
Blythe filed a notice of motion to vacate the pro confesso decree, supported
by affidavit. On August 3, 1897, the petition of Florence Blythe Hinckley
to file amendments to her petition of July 7, 1897, was granted, and at the
same time the objection of the Blythe Company that neither the complain-
ants nor the defendant Florence Blythe Hinckley was properly before the
court was reserved by the court for future consideration and determination.
The court thereupon set the hearing of the petition and motions for August
12, 1897, and on the 6th day of August granted the Blythe Company leave to
appear specially to the amended motion of John W. and Henry T. Blythe, and
to the motion and amended petition of Florence Blythe Hinckley. On
August 9, 1897, the company filed its objections; and on August 12th, reserving
all of its objections, filed its answers to the petition and motions of Florence
Blythe Hinckley and John W. and Henry T. Blythe. On the 6th day of
December, 1897, the court made and caused to be entered orders granting the
petition and motions of Florence Blythe Hinckley and John W. and Henry
T. Blythe: denying the motion of the Blythe Company to correct the min-
utes of July 7, 1897; and granting the motion of Florence Blythe Hinckley
to dismiss the original suit as to her. The opinions of the circuit court in
support of these rulings will be found reported in 84 Fed. 228, 245, 246.
After the court so ordered the dismissal of the suit, it gave leave to the
complainants, John W. and Henry T. Blythe, "to amend their bill, upon the
understanding that it would not necessitate any further argument, but
should be subject to the prior motion to dismiss the second amended and sup-
plemental bill, and to the order for a final decree entered thereon." Ac-
cordingly, on December 22, 1897, the complainants filed their "third amended
and supplemental bill in equity." This bill was substantially the same as
that immediately preceding, though it set up reasons why an action at

law would not be an adequate remedy, and amplified certain matters alleged to bear on the jurisdiction of the state courts. Between December 6 and December 22, 1897, to wit, on the 16th day of that month, the court made and caused to be entered an order denying the motion of Florence Blythe Hinckley to strike from the files the answer of the Blythe Company to the second amended and supplemental bill of John W. and Henry T. Blythe, and on the same day, to wit, December 16, 1897, made and caused to be entered an order denying the motion of the complainants to dismiss their suit as to the Blythe Company, and vacating its order granting John W. and Henry T. Blythe leave to appear specially to the cross bill. On the 22d day of December, 1897, the court gave judgment, amended January 20, 1898, by which the court annulled the pro confesso decree of July 3, 1897, as well as the orders entered in the rule book of the court on April 6th and May 4th, respectively, that the cross bill be taken pro confesso, as also the orders of the court of July 1, 1897, to the same effect, and dismissing the original and amended complaint of the complainants, as well as their amended and supplemental bills, "for want of either federal or equity jurisdiction, and without prejudice to complainants' right to bring or maintain an action at law," and decreeing that "the pleading of the Blythe Company filed on December 28, 1895, and styled, 'Answer of the Blythe Company to the Amended Complaint,' praying, among other things, for relief against the defendant Florence Blythe Hinckley, and also the pleading of the Blythe Company filed on February 1, 1897, styled, 'Answer of the Blythe Company, a Corporation, to the Second Amended and Supplemental Bill of Complaint of John W. Blythe and Henry T. Blythe, Complainants,' praying, among other matters, for relief against the defendant Florence Blythe Hinckley, be, and the same are, finally dismissed, so far as they, or either of them, constitute a cross bill or cross complaint against any party to the cause, and that the pleading of the Blythe Company filed on the 16th day of February, 1897, styled, 'Cross Bill of Complaint in Equity of the Blythe Company,' together with the amendments made thereto, be, and the same is hereby, finally dismissed as against each and all of the parties named therein as defendants, and in all respects and in every particular," and further decreeing that "the said Florence Blythe Hinckley has paid into court for the Blythe Company the costs imposed upon her as a condition of setting aside said decree in favor of the Blythe Company, and has complied in all respects with the orders of the court in relation to the terms of the setting aside of said decree," and directing that such decree be entered and enrolled as and for a final decree. From the decree so entered, the Blythe Company, as well as John W. and Henry T. Blythe, appealed to the supreme court, both of which appeals were by that court dismissed,—that of the Blythe Company on the 9th day of January, 1899. The mandate following the disposal of that appeal was filed in the court below on the 17th day of May, 1899. On the 5th day of September, 1899, the present bill to review the decree of December 22, 1897, for errors of law appearing therein, was filed by the Blythe Company in the court below, to which bill the defendant Florence Blythe Hinckley demurred, as did also the defendants John W. and Henry T. Blythe, which demurrers, except in so far as the demurrer of the defendant Florence Blythe Hinckley was based upon the complainants' laches, were sustained, and a decree accordingly entered on the 9th day of November, 1900, dismissing the bill of review, from which the present appeal was taken.

George W. Towle, Jr., and Lorenzo S. B. Sawyer, for appellant.

Robert Y. Haynes, W. H. H. Hart, and S. W. & E. B. Holladay, for appellees.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is contended on the part of the appellee Hinckley that the bill of review was filed too late. That objection was stated in several

different forms in her amended demurrer. Various other grounds of demurrer were also taken by her, all of which, in the opinion of the court sustaining the amended demurrer and directing the dismissal of the bill, were sustained, except that of laches, which, in the opinion, was overruled; and for this reason it is claimed on the part of the appellant that this court cannot consider the objection that the bill of review was filed too late, inasmuch as there is no appeal by Florence Blythe Hinckley. The answer to this is that there was no occasion for any appeal by her, for the reason that the decree was altogether in her favor; it having dismissed the bill of review, with costs in favor of the demurrant. In equity an appeal brings up the whole case, and any matter of law apparent upon the face of the bill of review is upon such an appeal open to the consideration of the court. If the decree dismissing the bill of review was right, it should be affirmed, regardless of the reasons assigned by the court for its judgment. Many a right judgment is given for a wrong reason. The rule is well settled in courts of equity of the United States that a bill of review must ordinarily be filed within the time limited by statute for taking an appeal from the decree sought to be reviewed, where, as here, the review sought is not founded on matters discovered since the decree. Thomas v. Brockenbrough, 10 Wheat. 146, 6 L. Ed. 287; Whiting v. Bank, 13 Pet. 6, 10 L. Ed. 33; Kennedy v. Bank, 8 How. 586, 12 L. Ed. 1209; Clark v. Killian, 103 U. S. 766, 26 L. Ed. 607. It was recently ruled by this court in the case of Reed v. Stanley, 38 C. C. A. 331, 97 Fed. 521, that where a party against whom a decree has been entered by a circuit court of equity has no right of appeal therefrom to the supreme court, either because no question appealable to that court was in issue, or because he failed to have a question of jurisdiction involved certified during the term at which the decree was entered, and his right of appeal is therefore limited to an appeal to the circuit court of appeals, the time within which he may file a bill of review is limited, by analogy, to the six months allowed by statute for taking an appeal to that court. In the present instance the decree sought to be reviewed was entered on the 22d day of December, 1897. From that decree the present complainant, the Blythe Company, sought and was allowed an appeal to the supreme court on the 10th day of February, 1898, and from that decree the complainants in the original bill, John W. and Henry T. Blythe, also appealed to the supreme court. The appeal of the Blythe Company was dismissed by the supreme court January 9, 1899 (172 U. S. 644, 19 Sup. Ct. 873, 43 L. Ed. 1183), whose mandate was filed in the lower court on the 17th day of the following May. The appeal of John W. and Henry T. Blythe was dismissed by the supreme court on the 3d day of April, 1899. 173 U. S. 501, 19 Sup. Ct. 497, 43 L. Ed. 783. The bill of review was not filed until the 5th day of September, 1899,—more than six months after the entry of the decree of December 22, 1897, and more than six months after the dismissal of the appeal of the Blythe Company by the supreme court, but less than six months after the filing of the supreme court's mandate in the circuit court. Each of the appeals mentioned was dismissed for want of jurisdiction of the subject-matter by the supreme court. The

appeal from the decree of December 22, 1897, given by law to the aggrieved parties, was that provided for by the act of March 3, 1891, creating the circuit courts of appeals, entitled "An act to establish circuit courts of appeals and to define and regulate in certain cases the jurisdiction of courts of the United States, and for other purposes," and was limited by that act to six months from the entry of the decree. If it be conceded that the time during which the attempted appeal of the Blythe Company from the decree to the supreme court was pending cannot be counted, still the fact remains that the judgment of the supreme court dismissing the appeal to it was entered more than six months prior to the filing in the court below of the bill of review. That judgment ended the appeal, whatever its character. Upon its rendition the appeal from the judgment of December 22, 1897, was no longer pending. "It was," as was said by the supreme court in the Case of Shiboys Jugiro, 140 U. S. 291, 295, 11 Sup. Ct. 770, 35 L. Ed. 510, "none the less a final disposition of the case because at a subsequent date, under the rules and practice of this court, a mandate would be sent down to the circuit court, showing the fact of the affirmance of its judgment." But we are also of the opinion that as the law did not give any appeal from the decree of December 22, 1897, to the supreme court, as was held by that court in the cases above cited, the attempted appeal therefrom by the Blythe Company was ineffectual for any purpose. It was a nullity, and therefore could not stop or suspend the running of the time within which that company was entitled to file a bill of review. Neither its action, nor that of the court of equity whose aid it was entitled to thus seek, was at all hindered or embarrassed during the pendency of an attempted appeal which was wholly unauthorized by law. It was, in effect, so decided by this court in Reed v. Stanley, supra. The final decree there sought to be reviewed was entered by the circuit court in favor of the complainants in the suit on June 18, 1896, 22 days after which, to wit, July 10, 1896, the term of the court expired. From that decree an appeal was taken on the 16th day of December, 1896, by the defendants to the supreme court, upon the sole ground that the circuit court had no jurisdiction of the suit, which appeal was dismissed by the supreme court May 24, 1897, for the reason that under the provisions of the act of March 3, 1891, establishing the circuit courts of appeals (26 Stat. 826), no appeal could be taken unless the certificate as to the jurisdiction was granted by the trial judge during the term at which the decree was entered. Merritt v. Bowdoin College, 167 U. S. 745, 17 Sup. Ct. 996, 42 L. Ed. 1209. The mandate of dismissal was received by the circuit court June 16, 1897. On the next day a second appeal was taken to the supreme court by the defendants upon the ground that the cause involved "the construction or application of the constitution of the United States," which appeal was likewise dismissed by the supreme court (169 U. S. 551, 18 Sup. Ct. 415, 42 L. Ed. 850), and the mandate certifying that dismissal was received by the circuit court March 28, 1898. Four days thereafter, to wit, on the 1st day of April, 1898, a bill of review was filed, seeking the review and reversal of the decree entered in the original suit on the 18th day

of June, 1896. An amendment to the bill of review was filed April 11, 1898, in the circuit court; and on June 2, 1898, another amendment to the bill of review was filed therein, in which was stated the time occupied by the two appeals to the supreme court from the decree sought to be reviewed. In holding that the bill of review there in question was filed too late, this court said:

"The record shows that in the case of Bowdoin College v. Merritt the question of jurisdiction was in issue, was sustained by the circuit court, and a decree on the merits rendered in favor of the complainants. The defendants to the suit thereupon had their election either to have the question of jurisdiction certified by the circuit court, and appeal directly to the supreme court, or to carry the whole case, including the question of jurisdiction, to the circuit court of appeals. For the latter purpose the act of congress allowed them six months from the entry of the decree, and also made it an essential condition of a direct appeal to the supreme court that a certificate of the circuit court be procured during the term at which the decree was rendered, to the effect that the question of the jurisdiction of the court to render the decree was in issue. Without the making of such certificate, the right to appeal to the supreme court did not exist at all, as was expressly decided by the supreme court in the cases cited. When, therefore, the term at which the decree in the case of Bowdoin College v. Merritt was entered expired, without the procuring of the necessary certificate, the opportunity of the defendants to that suit to avail themselves of an appeal to the supreme court on the question of jurisdiction was gone. The right to such appeal never had come into existence, and never thereafter could do so. The alternative, however, given them by the act of March 3, 1891, to appeal the whole case, including the question of jurisdiction, to the circuit court of appeals, continued to exist for the period of six months from the time of the entry of the decree complained of. Within the time thus allowed by statute for an appeal from the decree the defendants thereto were entitled, by analogy, to file a bill of review for the correction of any error apparent upon the face of the record of the case in which the decree was entered. Within that time the present bill of review was not filed. Under the act of March 3, 1891, as construed by the supreme court, there never came into existence any right on the part of the appellants to appeal to the supreme court from the decree in the case of Bowdoin College v. Merritt; that act having declared, in effect, that, unless the circuit court certified during the term at which the decree was rendered that the jurisdiction of the court to render the decree was involved, there could be no appeal to the supreme court. In view of this legislation, to permit the appellants to now bring up the decree complained of for re-examination by means of a bill of review would be to permit them to accomplish indirectly what the act of congress has prohibited them from doing directly."

In that case this court took no account of the time occupied by the two appeals to the supreme court from the decree there sought to be reviewed, for the reason, as appears from the opinion, that under the law no right of appeal to the supreme court ever existed, and therefore this court treated the attempted appeals there as wholly ineffectual for any purpose. The same thing must be true here, where by the law no right of appeal to the supreme court was given from the judgment sought to be reviewed.

Such cases as the present and that of Reed v. Stanley, supra, are essentially different from Ensminger v. Powers, 108 U. S. 292, 2 Sup. Ct. 643, 27 L. Ed. 732; Kimberly v. Arms (C. C.) 40 Fed. 548; and others cited by the appellant. In Ensminger v. Powers the decree of the circuit court was entered against the plaintiffs in the suit on the 27th day of December, 1873, from which they, in the

exercise of a right given them by the law, appealed to the supreme court in January, 1874. On the 13th of December, 1875, the appeal was dismissed by the supreme court for the failure of the appellants to file and docket the cause in that court in conformity with its rules. The bill of review considered in Ensminger v. Powers was not brought in the circuit court until the 9th day of September, 1876,—more than two years after the decree of December 27, 1873, thereby sought to be reviewed, was rendered. In overruling the objection there made, that the bill of review was not brought in time, the supreme court said:

"But the appeal to this court was perfected by the giving of a bond for costs in January, 1874, and although this court in December, 1865 [1875], dismissed the appeal for the failure of the appellants to file and docket the cause in this court, yet the cause was out of the court below and in this court until within two years before the bill in this suit was filed. The pendency of the appeal by Bridget Powers would have been a valid objection to the filing of a bill of review by her for the errors in law now alleged, and inasmuch as the appeal was not heard on its merits, but the prosecution of it was abandoned, we are of opinion that the bill of review was filed in time. While the appeal was pending here, although there was no supersedeas, the circuit court had no jurisdiction to vacate the decree in pursuance of the prayer of a bill of review, because such an action was beyond its control. The time during which the control was suspended to await the orderly conduct of business in this court in regard to hearing the appeal is not to be reckoned against Bridget Powers in this case, although she joined in the appeal. She was exercising a right in doing so, and as the city of Memphis was the principal plaintiff and appellant, and was endeavoring to protect its title in fee, and thus her right as a lessee, it may very well have been, as is alleged in the bill, that the appeal fell because the city refused to pay the necessary money for filing the transcript of the record. Being thus left to the protection of her own rights, she may well have concluded that a bill of review was preferable to the further prosecution of the appeal, when she had such good cause for that course, as now appears, although the same error might have been corrected if the appeal had been heard on the merits." 108 U. S. 302, 303, 2 Sup. Ct. 652, 27 L. Ed. 736.

The broad distinction between a case where the control of the circuit court over its decree by means of a bill of review is taken away by means of an appeal authorized by law, and a case such as that now before us, where the appeal attempted was wholly unauthorized by law, and therefore nothing existed to take away the control of the court over its judgment by means of a bill of review, is sufficiently manifest, without elaboration. In the case of Kimberly v. Arms, supra, it was held that the circuit court would not entertain a bill of review to vacate a decree from which the petitioners had prayed and been allowed an appeal to the supreme court, even though they averred in their petition for leave to file the bill that they did not intend to perfect their appeal in the supreme court. The decree which was there sought to be reviewed and set aside was one entered in the circuit court pursuant to a mandate of the supreme court. The defendants to the suit against whom the decree was thus rendered thereupon, and during the term of court at which the decree was given, prayed an appeal therefrom to the supreme court, which was allowed upon their giving bond with sureties to be approved by the court. Such appeal bond was duly executed and approved, after which the defendants peti-

tioned the court for leave to file a bill of review, in which they stated, among other things, "that it is not the purpose of defendants, as at present advised, to perfect their said appeal by filing the record and docketing this cause in the supreme court, as required by the rules of practice of that court." In respect to that averment the court, in its opinion refusing leave to file the bill of review, said:

"This averment does not, of course, amount to an abandonment of said appeal, nor to a definite purpose or intention to do so, but leaves the question of its further prosecution to the option of appellants. No new proceedings having been had in this court between the mandate of the supreme court and the decree based thereon, said appeal by defendants was, no doubt, improvidently taken and allowed. Still it has the effect of transferring the cause, and the decree sought to be reviewed, into the supreme court, where it will remain until heard and disposed of on the merits, or dismissed, under the provisions of the ninth rule of said court, for appellants' failure to file the record and docket the case."

The appeal in that case was not a nullity, for it was taken from a final decree from which the statute allowed an appeal to the supreme court. But, the decree from which the appeal was taken having been entered under and by virtue of a mandate of the supreme court issued in pursuance of the judgment of that court disposing of a former appeal in the cause, it was an appeal which the supreme court would entertain only to the extent of ascertaining whether it was in accordance with its mandate. Thus, in Stewart v. Salamon, 97 U. S. 361, 24 L. Ed. 1045, it is said that:

"An appeal will not be entertained by this court from a decree entered in the circuit or other inferior court in exact accordance with our mandate upon a previous appeal. Such a decree, when entered, is, in effect, our decree, and the appeal would be from ourselves to ourselves. If such an appeal is taken, however, we will, upon the application of the appellee, examine the decree entered, and, if it conforms to the mandate, dismiss the case, with costs. If it does not, the case will be remanded, with appropriate directions for the correction of the error."

Not one of the cases cited by the appellant holds that an attempted appeal in a case in which no appeal is by law allowed operates to suspend the running of the time during which a bill of review may be filed.

Being of the opinion that the bill in the present case was filed too late, we must affirm the judgment without regard to other questions argued by counsel. The judgment is affirmed.