LINDE AIR PRODUCTS CO. v. MORSE DRY DOCK & REPAIR CO.

(Circuit Court of Appeals, Second Circuit.    December 19, 1917.)

No. 83.

1. EQUITY ⬰415—DECREE—FORM.
   While there is a wide discretion in the chancellor as to the frame or language of his decree, the forms and modes of expression used do not affect the nature or character of the decision, for that depends on what has been decided.

2. EQUITY ⬰415—PRACTICE—DECREE.
   The statement in the decree of any facts proved or unproved has fallen into disuse, as unnecessary, except in matters of contempt, or in special cases, where it may be considered exceptional.

3. PATENTS ⬰323—INFRINGEMENT—DECREES.
   Under equity rule 71 (198 Fed. xxxviii, 115 C. C. A. xxxviii), declaring that, in drawing up decrees, neither the bill nor answer, nor other pleadings, nor the report of any master, nor any prior proceeding, shall be recited or stated, but the decree and order shall begin by stating that the cause came on to be heard, or to be further heard, etc., and shall be followed by the provisions of the decree, which is but declaratory of good modern practice, the ordering, directing, or mandatory part of a decree should merely point out with precision what is to be done, when, where, and by whom, and to or for whom; hence, in a suit for infringement of a patent, where the court, though finding that title to the patent was in plaintiff and that an alleged previous commercial use of the patented process had not been shown, found the patent invalid, a decree which merely dismissed the bill, and contained no recitals as to the findings of the court, was proper.

4. APPEAL AND ERROR ⬰854(2)—DECREE—VALIDITY.
   A decree should be sustained on appeal, though the lower court assigned erroneous reasons.

5. APPEAL AND ERROR ⬰893(2)—REVIEW—EQUITY CASES.
   An appeal in equity opens up the whole case, and brings before the reviewing tribunal the entire case.

6. APPEAL AND ERROR ⬰597(1)—RECORD—MATTERS TO BE INSERTED.
   In a suit for infringement of a patent, where defendant set up as defenses invalidity for lack of patentable invention, noninfringement, commercial use of substantially the same process, and lack of title in plaintiff to the patent, the court, though finding that the commercial use of substantially the same process was not established, and that plaintiff's title was good, dismissed the bill on the ground of the invalidity of the patent. The final decree briefly dismissed the bill.    Held, that the appeal brought up the entire case, and evidence relating to plaintiff's title to the patent and previous commercial use of substantially the same process should be included in the transcript on appeal, for such evidence might sustain the decree, if the reasons assigned in the lower court were not approved.

7. PATENTS ⬰328—INVENTION—ANTICIPATION—"CUT."
   The Jottrand patent, No. 831,078, for a method of cutting metal articles, consisting in directing a heating jet upon the object to be cut along the line of section, so as to raise the metal to a temperature enabling oxidation without fusion of the metal, in directing simultaneously a jet of oxygen under pressure upon the heated part of the object, and in moving simultaneously both jets along the line of section, held invalid, in view of the prior state of the art and publications, and anticipated, despite the use of the word "cut," which indicates a severance perfectly

⬰For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

clean; the processes of melting and fusing metals, which are, respectively, liquifying by heat and melting into combination with others by means of oxyhydrogen blowpipes, being well known, and the patentee's own particular process, which used such knowledge so as to form a clean line of severance, having also been previously disclosed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cut.]

8. PATENTS ⚙234—INVENTION—INFRINGEMENT.

That the words preferred by the patentee to define his invention apply literally to another's device suggests, but does not prove, infringement, and there must be substantial identity to justify that conclusion.

9. PATENTS ⚙69—ANTICIPATION—PUBLICATION.

For prior publications to be effective, as anticipatory, they must substantially furnish such details as are necessary for the practical working of the invention.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by the Linde Air Products Company against the Morse Dry Dock & Repair Company. From a decree dismissing the bill (239 Fed. 909), complainant appeals. Affirmed.

The action is the usual bill in equity upon patent to Jottrand, No. 831,078, and all the claims thereof. The application was filed August 22, 1905, and the patent issued September 18, 1906. The specification purports to disclose a process or method of cutting metal articles, particularly those of a readily oxidizable metal, by means of a blowpipe of any appropriate kind directed along the line of section, there being simultaneously directed upon the same line at a certain distance from the jet of the blowpipe a jet of oxygen under pressure.

The fifth claim, in its definition of the patentee's method, sets it forth more fully than any other. That claim is as follows:

"5. The method of cutting plates, pipes, and other metal articles, consisting in directing a heating jet upon the object to be cut, along the line of section, so as to raise the metal to a temperature enabling oxidation without fusion of the metal, in directing simultaneously a jet of oxygen under pressure upon the heated part of the object, and in moving simultaneously both jets along the line of section."

The bill and answer present no singularities in form, but after the evidence was completed there clearly appeared the following defenses to the suit: (1) Invalidity for lack of patentable invention over prior patents and publications. (2) Noninfringement upon a proper construction of the patent in the light of said prior art. (3) A commercial use of substantially the same process referred to throughout the case as the "Harris" use. (4) No title in the plaintiff to the patent. (5) Restraint of trade and implied license.

The trial judge, in the opinion filed, held that the Harris use had not been affirmatively established, that plaintiff's title was good, that the defense of restraint of trade and implied license was not within the pleadings, and avoided discussion of the question of infringement of the patent properly construed by holding it invalid. Thereupon defendant submitted a final decree directing briefly that the bill be dismissed, with costs, and plaintiff a form in and by which the court would have specifically passed on each one of the issues suggested by the evidence, and particularly overruled the Harris use and adjudged the title to the patent in suit in plaintiff. The District Judge signed the form of decree propounded by defendant. Thereupon plaintiff appealed from the entire decree and under equity rule 75 (198 Fed. xl, 115 C. C. A. xl) served a præcipe indicating that the transcript on appeal should not contain any of the evidence relating to the Harris use or to plaintiff's title to the patent. Thereupon defendant by counter præcipe demanded that such omitted evidence be included, and the court held with defendant. Thereafter by leave of court plaintiff specifically assigned for error (1) the refusal to

enter decree in the form suggested by plaintiff, and (2) compelling the incorporation in the transcript (at appellant's expense) of the testimony sought to be omitted by plaintiff, in addition to the usual assignment that the court erred in declaring the patent invalid, and dismissing the bill.

Thomas B. Kerr and Drury W. Cooper, both of New York City, for appellant.

Livingston Gifford, of New York City, for appellee.

Before WARD, ROGERS and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The procedural question raised herein is not without importance, if plaintiff's contentions are justified. They suggest consideration of (1) the fundamental nature of that portion of a decree not specifically covered by equity rule 71 (198 Fed. xxxviii, 115 C. C. A. xxxviii), i. e., the mandatory part; and (2) the effect of an appeal upon the trial record.

[1, 2] Undoubtedly there is a wide discretion in a chancellor as to the frame or language of his decree, but the "forms and modes of expression, by which any tribunal pronounces its discretion to have been exercised, do not affect the nature or character of its decision; that depends on what it has decided." Baldwin, J., in Holmes v. Jennison, 14 Pet. 540, 10 L. Ed. 579. Yet there is a tradition, of persuasive, if not binding, force, as to such matters, and the statement in decree of any facts proved or unproved "has altogether fallen into disuse, as unnecessary, except in matters of contempt, or in special cases, where it may be considered exceptional." Dan. Ch. (Ed. 1901) p. 633.

[3] Thus rule 71 is but declaratory of good modern practice, and may be supplemented thus: The ordering, directing, or mandatory part of a decree should merely "point out with precision what is to be done, when, where and by whom and to or for whom." Street, Fed. Eq. § 1965, and citations. This rule naturally presumes due consideration, not only of the trial proof, but of the allegations of the bill. This bill (and all of its kind) make in legal effect one allegation, i. e., defendant has infringed, and that allegation was held not to be proved. To be sure, noninfringement may be found as the result of many things, or of one thing out of many shown and discussed; but the result is one and the same, dismissal of bill because probata do not sustain allegata. Therefore the only "thing to be done," the only function of the mandate of the decree, is to dismiss the bill. Thus it is plain that the contention in substance is that an equity judge is compelled to insert in his decree findings of fact, a proposition we think wholly unsustainable.

It is not uncommon for the court to distinguish between invalidity and noninfringement in dismissing a patent bill. The cases referred to and recently before us (Thacher v. Transit, etc., Co., 234 Fed. 640, 48 C. C. A. 406, and Oriental, etc., Co. v. De Jonge, 234 Fed. 895, 148 C. C. A. 493) do so, and we do not intimate, either that no lawful right exists to enter such decrees in discretion, or that circumstances may not render that or any other special form appropriate or fair. We do hold that it was not error to sign the form of decree herein.

[4-6] The second part of appellant's contention assumes, if it does not assert, that, had such decree as it suggested been entered, or indeed any form assigning reasons for action (as in the cases just cited), the scope or nature of the appeal would have been changed. But the action

of the court, its final order, would have been the same; i. e., dismissal. No conceivable appeal by a plaintiff dismissed is worth anything, unless it complains of that act, and assigns it for error; and citations scarcely are needed to fortify the holding that a decree must be sustained if it was right on the record, though only wrong reasons were relied on in the opinion (Gideon v. Hinds, 238 Fed. 140, 151 C. C. A. 216), or that an appeal in equity "opens up the whole case," and "brings up the whole case" (Pittsburgh, etc., Co. v. Baltimore, etc., Co., 61 Fed. 708, 10 C. C. A. 20; Blythe Co. v. Hinckley, 111 Fed. 837, 49 C. C. A. 647). Therefore the whole record, or at least every part thereof justifying or alleged to justify the decree made—i. e., the action directed—must come up with an appeal from the entire decree. Aliter only when but a part of the decree is appealed from. Nashua, etc., Co. v. Boston, etc., Co., 61 Fed. 237, 9 C. C. A. 468.

Even when the whole record is before the appellate court, the assignments of error often (in effect) limit the appeal, in the sense of narrowing the field of discussion. This is pointed out in the case last cited, and this truth was assumed when we said in the Thacher Case, supra, that it was "necessary" to consider only the question of infringement, where the court below had decreed validity, and appellant assigned for error the infringement finding. But we did not, and do not, hold that, had we disagreed with the trial judge in his decree of noninfringement of a valid patent, we should have been in any way precluded from examining the record to ascertain whether the decree was right on the plain principle that there can be no such thing as infringement of an invalid patent.

Considering appellant's contention in its entirety, it is substantially this: That because some of the evidence solely related to matters of defense, mentally and (so to speak) physically separable from other matters directed to the same legal question, it was therefore both proper and obligatory to enter a decree and authorize a transcript putting the noninfringing defendant to an appeal, in respect of every ruling on evidential values unfavorable to defendant. This is (as above intimated) mere fact finding, and overlooks the legal certainty that there is no such thing as a dependent or ancillary appeal. Defendant, with bill dismissed, certainly could not have appealed alone or independently from an expression in decree of the fact that the Harris use was not lawfully established; therefore such finding was not part of the mandatory portion of any decree. But because the evidence relating to that use was within the pleadings, and might justify dismissal, and require affirmance of decree, if all else failed, plaintiff was rightly obliged to insert it in the appeal record.

[7-9] Turning now to the merits of the patent invalidated by decision below, it may be noted that the claim prefixed hereto is regarded by plaintiff as "specifying the essential steps in effecting a cut." For that reason we choose it as the preferred definition of invention, it having been most insistently stated by experts and counsel that before Jottrand many others had melted, fused, brazed, and welded metals by means of the oxyhydrogen blowpipe, with and without the aid of an oxygen jet; but this patentee was the first to disclose a method for cutting metal by the same means or any arrangement or adaptation thereof.

It seems, therefore, necessary to inquire how and why it is that old instruments or the gases fed through them sometimes *melt* and sometimes *cut,* and whether the distinction between these two words so strenuously insisted upon rests upon a real difference of meaning.

In view of the exhaustive history of art given by the court below, and common knowledge of the heating capacity of the oxyhydrogen or other like flame under blowpipe influence, and the nature of oxidation as (in common speech) a burning process, it seems sufficient to assume and assert, as prior and even familiar art, that any and all metals or metallic bodies capable of oxidation could be and often had been melted (i. e., liquified by heat) or fused (i. e., strictly, melted into combination with others), or converted into oxides and as oxides removed from place, by one or both of the well-known implements, tools, or devices just named.

In such an art, Jottrand proposes, as a new method, the direction of a heating jet upon an object (i. e., oxidizable metal) along any preferred line, thereby raising the metal in its path to a temperature permitting "oxidation without fusion" (fusing here evidently means melting) and "simultaneously" putting an oxygen jet under pressure, on and along the heated line, and then driving the two jets (spaced apart a little) along the line of heat. He says the result of this operation is a *cut.*

The specification explains that oxides are more "fusible" than the metal itself, wherefore, if his pressure oxygen jet oxidizes at the proper temperature (not stated in the disclosure), the resulting oxides "flow readily," and his path of preheating becomes a line of "severance, perfectly clean," and therefore (we infer) he feels justified in calling it a *cut.*

There is no magic in a name, nor in a claim; that the words preferred by a patentee to define his invention apply literally to another's device suggests, but does not prove, infringement; there must be a substantial identity, to justify that conclusion of law. Edison v. American Co., 151 Fed. 787, 81 C. C. A. 391.

Assuming, then (for argument's sake), that defendants have cleanly severed metals with flame and jet, plaintiff cannot monopolize method, action or means by the word "cut," and since the means are not sought to be covered by this process patent, some other novelty and merit must be discovered to justify the grant. If found at all, the patentable invention must rest in the novel application of some thermo-chemical action so functioning, when instigated by Jottrand's disclosure of old means, as to produce successively metallic oxides, and removal of same, within so confined an area as to justify calling the cleared space a *cut,* rather than a hole or hack.

Accordingly it is urged that, observing (dehors the specification) that the blow flame will easily heat to (say) 1000° C., at which temperature oxygen combines with iron, that iron melts at about 1520° C., and its oxide at 1250° C., there is within this indicated range room to create and remove a line of oxide without disturbing the adjacent masses of iron not directly in the path of the heating flame, which may fairly be inferred from the disclosure as preferably of small area, or width. Such use of blow flame and oxygen jet is said to differ from everything in the prior art, in that it suggests, and indeed requires, a "pro-

gressive movement parallel to the face of the" metal, instead of an "axial movement" like that of a punch or awl.

While noting that Jottrand does plainly contemplate (in his specification) punching holes as well as sawing with his flame and jet, we think that the foregoing states the best case that can be made in support of any such invention as is claimed; for we pass as equally obvious and irrelevant any possibility of invention in the machine or appliance used in the specification to illustrate the method. A patent was obtained on that, which is not here in suit, and no limitations, expansions, or explanations of the method can be based on the mechanics of Jottrand's apparatus; for it is also obvious that this is not one of those twice-patented inventions, as to which it is impossible to imagine an infringement of method that would not also infringe the only possible machine or device working by or in that method. If this patent is good, it is a true process.

Whether there is virtue in it depends on this question of fact: What is the thermo-chemical action taking place in the hole, cut, kerf, opening, or solution of continuity produced by a preheating flame applied to oxidizable metal and followed by an oxygen jet under pressure, be said jets or flames narrow or broad? We think it plainly proved that the metal burns, and is blown out of the preheated area partly as oxide and partly as melted metal.

We do not think this method of removing metal either from a hole, or a cut can be thought new after Dr. Menne's publications of 1903–04. The Menne patents we also regard as publications, as his claims were not directed to Jottrand's goal. In the patent of 1902 (703,940) Menne discloses briefly the thermo-chemical action so laboriously sworn to in this record; and in his address he describes the release of one piece of metal from another by "melting through" one of them— the same being a stated equivalent for "sawing through," and that Jottrand's *cut* is a cut by melting was admitted by all the experts—who really could not disagree, except as to how much of what was removed was oxidized and how much was unoxidized metal, a debate we cannot regard as important.

Plaintiff appeals to the rule, fully recognized by us, that prior publications, to be effective, must substantially furnish such details as are necessary for the practical working of the alleged invention. Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; McMillin v. Barclay, 5 Fish. 202, Fed. Cas. No. 8,902; Hill v. Evans, 31 L. J. 463. We find that for everything done by this defendant (very rough work) Menne was and is a much better and clearer guide than Jottrand; whether the latter has anywhere disclosed a means for finer work is not before us. His cutting and Menne's melting are as methods or processes identical; they are so for reasons that go back to chemical fundamentals, and that his cutting device may be clever, and has small, neat apertures, justly spaced and proportioned, is not now relevant.

It may be added that, if Menne's publications needed strengthening, we should find reinforcement in the Revue Industrielle of April, 1904. The foregoing relieves us of the necessity of considering the other matters of defense, concerning which we give no opinion.

Decree affirmed, with costs.